## UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF FLORIDA
## TAMPA DIVISION

LOCATION 24, LLC                                                   8:22-cv-150-VMC-TGW

      Plaintiff,

v.

DOCTORS SAME DAY SURGERY
CENTER, INC., and HCA HOLDINGS,
INC.

      Defendants.

_____/

## DEFENDANTS' MOTION TO DISMISS AND
## INCORPORATED MEMORANDUM OF LAW

**LASH & GOLDBERG LLP**
Martin B. Goldberg
Florida Bar No. 0827029
Daryl L. Saylor
Florida Bar No. 0100376
Michael Strauch
Florida Bar No. 13988
Benjamin Shiekman
Florida Bar No. 113114
100 Southeast 2nd Street, Suite 1200
Miami, FL 33131-2158
Telephone: (305) 347-4040
Facsimile: (305) 347-4050
*Counsel for HCA Holdings, Inc. and Doctors*
*Same Day Surgery Center, Inc.*

Dated: March 4, 2022

## <u>TABLE OF CONTENTS</u>

I.   PRELIMINARY STATEMENT.........................................................................1

II.  BACKGROUND......................................................................................3

III. LEGAL ARGUMENT ...............................................................................5

   1.   THE SHERMAN ACT CLAIMS FAIL AS A MATTER OF LAW..............6

     A.   Plaintiff Lacks Antitrust Standing...................................................6

       i.    The Complaint Lacks Cognizable Allegations of Antitrust Injury.............7

       ii.   The Allegations of Harm to Plaintiff Are Inapposite ...............................8

       iii.  The Conclusory Allegations of Harm Are Not Cognizable......................9

     B.   Each Sherman Act Claim Fails for Failure to Plead a Relevant Market......12

     C.   The Claims Under Section 1 of the Sherman Act Fail as a Matter of Law ..13

       i.    The Complaint Does Not Sufficiently Allege an Agreement Between Two or More Parties ......................................................................................14

       ii.   The Complaint Fails to Plead Anticompetitive Effects ...........................15

       iii.  The Complaint Fails to Plead the Potential for Effects on Competition ..16

     D.   The Section 1 Claim Based Upon the ARPA Fails as a Matter of Law.......18

     E.   The Sherman Act Section 2 Claim Fails ....................................................21

   2.   THE FLORIDA ANTITRUST CLAIM FAILS AS A MATTER OF LAW.24

   3.   COUNTS IV-IX LACK SUPPLEMENTAL JURISDICTION ....................24

   4.   THE INTERFERENCE CLAIM FAILS AS A MATTER OF LAW ...........24

   5.   THE FRAUD CLAIM FAILS AS A MATTER OF LAW ...........................25

   6.   THE FIDUCIARY DUTY CLAIM FAILS AS A MATTER OF LAW .......26

   7.   THE CONTRACT CLAIM (ARPA) FAILS AS A MATTER OF LAW......27

   9.   THE COMPLAINT IS AN IMPROPER SHOTGUN PLEADING.............30

i

Lash&Goldberg LLP
LASHGOLDBERG.COM

MIAMI 100 Southeast 2nd Street, Suite 1200  •  Miami, Florida  33131-2158  •  305 347 4040 tel  305 347 4050 fax
FT. LAUDERDALE 2500 Weston Road, Suite 220  •  Weston, Florida  33331-3615  •  954 384 2500 tel  954 384 2510 fax
TAMPA 142 West Platt Street, Suite 118  •  Tampa, FL 33606-2315  •  813-284-4002 tel

IV. CONCLUSION ...................................................................................................30

Lash&GoldbergLLP
LASHGOLDBERG.COM

**MIAMI** 100 Southeast 2nd Street, Suite 1200  •  Miami, Florida  33131-2158  •  305 347 4040 tel   305 347 4050 fax
**FT. LAUDERDALE**  2500 Weston Road, Suite 220  •  Weston, Florida  33331-3615  •  954 384 2500 tel   954 384 2510 fax
**TAMPA**  142 West Platt Street, Suite 118  •  Tampa, FL 33606-2315  •  813-284-4002 tel

## TABLE OF AUTHORITIES

*Andrx Pharms., Inc. v. Elan Corp., PLC,*
421 F.3d 1227 (11th Cir. 2005)........................................................................24

*Ansaarie v. First Coast Cardiovascular Inst., P.A.,*
252 So.3d 287 (Fla. 1st DCA 2018)................................................................19

*Appleton v. Intergraph Corp.,*
627 F.Supp.2d 1342 (M.D. Ga. 2008) ............................................................23

*Aquatherm Indus., Inc. v. Fla. Power & Light Co.,*
971 F.Supp. 1419 (M.D. Fla. 1997).........................................................10, 22

*Ashcroft v. Iqbal,*
556 U.S. 662 (2009) ..........................................................................................6

*Austin v. Blue Cross & Blue Shield of Ala.,*
903 F.2d 1385 (11th Cir. 1990).....................................................................6, 7

*Bay Area Surgical Mgmt., LLC v. Aetna Life Ins. Co.,*
2016 WL 3880989 (N.D. Cal. July 18, 2016).................................................17

*Bell Atl. Corp. v. Twombly,*
550 U.S. 544 (2007) ..........................................................................................6

*Bruce v. U.S. Bank Nat. Ass'n.,*
770 Fed.App'x 960 (11th Cir. 2019) ...............................................................24

*Brunswick Corp. v. Pueblo Bowl-O-Mat, Inc.,*
429 U.S. 477 (1977) ..........................................................................................7

*Bus. Elecs. Corp. v. Sharp Elecs. Corp.,*
485 U.S. 717 (1988) ........................................................................................19

*Classic Soft Trim, Inc. v. Albert,*
2020 WL 6734402 (M.D. Fla. Aug. 13, 2020) ...............................................10

*Consultants & Designers, Inc. v. Butler Serv. Grp., Inc.,*
720 F.2d 1553 (11th Cir. 1983)................................................................19, 21

*Copperweld Corp. v. Indep. Tube Corp.,*
467 U.S. 752 (1984) ........................................................................................15

iii

Lash&Goldberg LLP
LASHGOLDBERG.COM

**MIAMI** 100 Southeast 2nd Street, Suite 1200 • Miami, Florida 33131-2158 • 305 347 4040 tel  305 347 4050 fax
**FT. LAUDERDALE** 2500 Weston Road, Suite 220 • Weston, Florida 33331-3615 • 954 384 2500 tel  954 384 2510 fax
**TAMPA** 142 West Platt Street, Suite 118 • Tampa, FL 33606-2315 • 813-284-4002 tel

*Crosby v. Hosp. Auth. of Valdosta & Lowndes Cnty.*,
  93 F.3d 1515 (11th Cir. 1996) .................................................................14

*Cruz v. Underwriters at Lloyd's London*,
  2014 WL 3809179 (M.D. Fla. Apr. 1, 2014).........................................28

*Dunn v. Air Line Pilots Ass'n*,
  193 F.3d 1185 (11th Cir. 1999).............................................................25

*Duty Free Ams., Inc. v. Estee Lauder Cos.*,
  797 F.3d 1248 (11th Cir. 2015).........................................12, 18, 21, 23

*Duty Free Ams., Inc. v. Estee Lauder Cos.*,
  946 F.Supp.2d 1321 (S.D. Fla. 2013) ..................................................15

*Eastman Kodak Co. v. Image Tech. Servs., Inc.*,
  504 U.S. 451 (1992) ...............................................................................21

*Ekbatani v. Cmty. Care Health Network, LLC*,
  2022 WL 31793 (11th Cir. Jan. 4, 2022)................................................6

*F.T.C. v. Hosp. Bd. of Dirs. of Lee Cnty.*,
  38 F.3d 1184 (11th Cir. 1994) ...............................................................18

*Fend v. Walsh*,
  2020 WL 5822420 (S.D. Fla. Sept. 14, 2020)......................................27

*Fin-S Tech, LLC v. Surf Hardware Int'l-USA, Inc.*,
  2014 WL 12461350 (S.D. Fla. Aug. 27, 2014)....................................24

*Fla. Evergreen Foliage v. E.I. DuPont De Nemours & Co.*,
  336 F.Supp.2d 1239 (S.D. Fla. 2004) ..................................................26

*Fritz v. Fritz*,
  219 So.3d 234 (Fla. 3d DCA 2017) ......................................................28

*Garfield v. NDC Health Corp.*,
  466 F.3d 1255 (11th Cir. 2006).............................................................25

*Gemini Invs. III, L.P. v. Nunez*,
  78 So.3d 94 (Fla. 3d DCA 2012) ..........................................................26

**Lash&Goldberg**LLP
LASHGOLDBERG.COM

**MIAMI** 100 Southeast 2nd Street, Suite 1200 • Miami, Florida 33131-2158 • 305 347 4040 tel  305 347 4050 fax
**FT. LAUDERDALE** 2500 Weston Road, Suite 220 • Weston, Florida 33331-3615 • 954 384 2500 tel  954 384 2510 fax
**TAMPA** 142 West Platt Street, Suite 118 • Tampa, FL 33606-2315 • 813-284-4002 tel

*Glades Pharms., LLC v. Murphy*,
　2006 WL 3694625 (N.D. Ga. Dec. 12 .................................................................16

*Godix Equip. Export Corp. v. Caterpillar, Inc.*,
　948 F.Supp. 1570 (S.D. Fla. 1996) .....................................................................22

*Graphic Prods. Distribs., Inc. v. Itek Corp.*,
　717 F.2d 1560 (11th Cir. 1983).........................................................................17

*Great Escape, Inc. v. Union City Body Co., Inc.*,
　791 F.2d 532 (7th Cir. 1986) .............................................................................23

*GTE Data Servs., Inc. v. Elec. Data Sys. Corp.*,
　717 F.Supp. 1487 (M.D. Fla. 1989).....................................................................20

*Gulf States Reorganization Grp., Inc. v. Nucor Corp.*,
　822 F.Supp.2d 1201 (N.D. Ala. 2011) ...............................................................22

*Herssein Law Grp. v. Reed Elsevier, Inc.*,
　594 Fed. App'x 606 (11th Cir. 2015) .................................................................28

*In re Publication Paper Antitrust Litig.*,
　690 F.3d 51 (2d Cir. 2012) ..................................................................................6

*Iris Wireless LLC v. Syniverse,*
　*Tech.*, 49 F.Supp.3d 1022 (M.D. Fla. 2014) ......................................................22

*Jacobs v. Tempur-Pedic Int'l, Inc.*,
　626 F.3d 1327 (11th Cir. 2010)...................................................................passim

*JES Props., Inc. v. USA Equestrian, Inc.*,
　253 F.Supp.2d 1273 (M.D. Fla. 2003) ...............................................................12

*Johnson v. Univ. Health Servs., Inc.*,
　161 F.3d 1334 (11th Cir. 1998)...........................................................................7

*Kendall v. Visa U.S.A.*,
　518 F.3d 1042 (9th Cir. 2008) ...........................................................................15

*Lavender Health Care, LLC v. Redstone LLC*,
　2021 WL 4169796 (M.D. Fla. Sept. 14, 2021) ..................................................22

v

**Lash&Goldberg**LLP
LASHGOLDBERG.COM

**MIAMI** 100 Southeast 2nd Street, Suite 1200 • Miami, Florida 33131-2158 • 305 347 4040 tel   305 347 4050 fax
**FT. LAUDERDALE** 2500 Weston Road, Suite 220 • Weston, Florida 33331-3615 • 954 384 2500 tel   954 384 2510 fax
**TAMPA** 142 West Platt Street, Suite 118 • Tampa, FL 33606-2315 • 813-284-4002 tel

*Lektro-Vend Corp. v. Vendo Co.,*
    660 F.2d 255 (7th Cir. 1981) ....................................................................19

*Levine v. Cent. Fla. Med. Affiliates, Inc.,*
    72 F.3d 1538 (11th Cir. 1996) ........................................................... 14, 16

*McDonald v. Johnson & Johnson,*
    722 F.2d 1370 (8th Cir. 1983) ..................................................................20

*Metzler v. Bear Auto. Serv. Equip. Co.,*
    19 F.Supp.2d 1345 (S.D. Fla. 1998) .........................................................25

*Milazzo v. First Liberty Ins. Co.,*
    2021 WL 5843073 (M.D. Fla. Dec. 9, 2021) .........................................26

*Monsanto Co. v. Spray-Rite Serv. Corp.,*
    465 U.S. 752 (1984) ..................................................................................14

*N. Pac. Ry. Co. v. U.S.,*
    356 U.S. 1 (1958) ......................................................................................17

*Nat'l Soc'y of Prof'l Eng'rs v. U.S.,*
    435 U.S. 679 (1978) ..................................................................................23

*NCAA v. Bd. of Regents of the Univ. of,*
    *Okla.,* 468 U.S. 85 (1984) ..........................................................................14

*Orkin Extermination Co., Inc. v. Bailey,*
    550 So.2d 563 (Fla. 4th DCA 1989) .........................................................19

*Pierson v. Orlando Reg'l Healthcare Sys., Inc.,*
    619 F.Supp.2d 1260 (M.D. Fla. 2009) ............................................... 16, 23

*Procaps S.A. v. Patheon, Inc.,*
    845 F.3d 1072 (11th Cir. 2016)............................................................. 1, 10

*Quality Auto Painting Ctr. of Roselle, Inc. v. State Farm Indem. Co.,*
    917 F.3d 1249 (11th Cir. 2019)................................................................16

*Roman v. LoanDepot.com, LLC,*
    387 F.Supp.3d 1389 (M.D. Fla. 2019).....................................................28

Lash&Goldberg LLP
LASHGOLDBERG.COM

**MIAMI** 100 Southeast 2nd Street, Suite 1200  •  Miami, Florida  33131-2158  •  305 347 4040 tel   305 347 4050 fax
**FT. LAUDERDALE** 2500 Weston Road, Suite 220  •  Weston, Florida  33331-3615  •  954 384 2500 tel   954 384 2510 fax
**TAMPA** 142 West Platt Street, Suite 118  •  Tampa, FL 33606-2315  •  813-284-4002 tel

*Servs., Inc. v. Dornier Med. Sys., Inc.*,
  134 F.3d 1458 (11th Cir. 1998)..............................................................................23

*Spanish Broad. Sys. of Fla., Inc. v. Clear Channel Comms., Inc.*,
  376 F.3d 1065 (11th Cir. 2004).......................................................................passim

*Spectrum Sports, Inc. v. McQuillan*,
  506 U.S. 447 (1993) .............................................................................................21

*St. Joseph's Hosp., Inc. v. Hosp. Corp. of Am.*,
  795 F.2d 948 (11th Cir. 1986) ...........................................................................15

*Sulmeyer v. Coca Cola Co.*,
  515 F.2d 835 (5th Cir. 1975) ..............................................................................24

*Tarpon Transp. Servs., Inc. v. Total Quality Logistics, LLC*,
  2021 WL 3111641 (M.D. Fla. July 22, 2021) ....................................................29

*Thomas Home Corp. v. Reve Dev. Corp.*,
  2005 WL 8164951 (N.D. Fla. Mar. 18, 2005).....................................................22

*TI Inv. Servs., LLC v. Microsoft Corp.*,
  23 F.Supp.3d 451 (D.N.J. 2014) ...........................................................................6

*Todorov v. DCH Healthcare Auth.*,
  921 F.2d 1438 (11th Cir. 1991)................................................................ 6, 14, 16

*U.S. Anchor Mfg., Inc. v. Rule Indus., Inc.*,
  7 F.3d 986 (11th Cir. 1993) ........................................................................ 18, 22

*U.S. Steel Corp. v. Fortner Enters., Inc.*,
  429 U.S. 610 (1977) .............................................................................................24

*Weiland v. Palm Beach Cnty. Sheriff's Off.*,
  792 F.3d 1313 (11th Cir. 2015).............................................................................31

*Williamson Oil Co. v. Philip Morris USA*,
  346 F.3d 1287 (11th Cir. 2003).............................................................................16

*Wuesthoff Health Sys., Inc. v. Health First, Inc.*,
  2007 WL 9719123 (M.D. Fla. Jan. 29, 2007) ....................................................15

Lash&Goldberg LLP
LASHGOLDBERG.COM

**MIAMI** 100 Southeast 2nd Street, Suite 1200 • Miami, Florida 33131-2158 • 305 347 4040 tel  305 347 4050 fax
**FT. LAUDERDALE** 2500 Weston Road, Suite 220 • Weston, Florida 33331-3615 • 954 384 2500 tel  954 384 2510 fax
**TAMPA** 142 West Platt Street, Suite 118 • Tampa, FL 33606-2315 • 813-284-4002 tel

*XP Global, Inc. v. AVM, L.P.*,
    2016 WL 4987618 (S.D.  Fla. Sept. 19, 2016)......................................................26

*YMD Records, LLC v. Ultra Enters., Inc.*,
    361 F.Supp.3d 1258 (S.D. Fla. 2019) ...................................................................15

## **Statutes and Other Authorities**

15 U.S.C. § 1 ...............................................................................................................2

15 U.S.C. § 2 ...............................................................................................................2

15 U.S.C. § 15 .............................................................................................................6

31 U.S.C. § 3279........................................................................................................12

42 U.S.C. § 1320a-7n ..................................................................................................5

42 U.S.C. § 1395nn ......................................................................................................5

Fla. Stat. § 395.002(3) ...............................................................................................11

Fla. Stat. § 542.335 ....................................................................................................19

Fla. Stat. § 542.335(1)(b)(4)(b) .................................................................................19

Fla. Stat. § 542.335(1)(d)(3) ......................................................................................19

Fla. Stat. § 620.2001(1)-(2)........................................................................................27

Federal Rules of Civil Procedure 8(a), 9(b) and 12(b)(6) .......................................1, 3

Lash&Goldberg LLP
LASHGOLDBERG.COM

**MIAMI** 100 Southeast 2nd Street, Suite 1200 • Miami, Florida 33131-2158 • 305 347 4040 tel  305 347 4050 fax
**FT. LAUDERDALE** 2500 Weston Road, Suite 220 • Weston, Florida 33331-3615 • 954 384 2500 tel  954 384 2510 fax
**TAMPA** 142 West Platt Street, Suite 118 • Tampa, FL 33606-2315 • 813-284-4002 tel

> *"[T]his is essentially a breach of contract case…. [The] failure to support an antitrust theory is not all that surprising…. '[S]ome antitrust cases are intrinsically hopeless because … they merely dress up in antitrust garb what is, at best, a business tort or contract violation.'"[1]*

Pursuant to Federal Rules of Civil Procedure 8(a), 9(b) and 12(b)(6), Defendants HCA Holdings, Inc. ("HCA") and Doctors Same Day Surgery Center, Inc. ("General Partner") (together "Defendants") move to dismiss Plaintiff Location 24, LLC's ("Plaintiff") complaint with prejudice.[2] In support, Defendants state as follows:

## I. PRELIMINARY STATEMENT

Plaintiff contorts an unexceptional commercial dispute into a federal antitrust lawsuit. But the deeply flawed Complaint, which fails, among many other shortcomings, to plead antitrust standing—the *sine qua non* of an antitrust claim—lays bare that this effort strains law, fact, common sense, and basic economics.

The allegations here are simple: Plaintiff and the General Partner are owners of Doctors Same Day Surgery Center, Ltd. ("Partnership"), which owns and operates Doctors Same Day Surgery Center ("Surgery Center"), an ambulatory surgery center ("ASC") in Sarasota, Florida. The Partnership was formed decades ago and is a profitable venture. A common thread running through the Complaint is the fact that Plaintiff wishes to form a competing ASC and fund the project with its buy-out from the Partnership. Plaintiff faces two problems though. On the one hand, the Partnership's amended and restated limited partnership agreement, dated April 1,

---

[1] *Procaps S.A. v. Patheon, Inc.*, 845 F.3d 1072, 1087 (11th Cir. 2016) (citations omitted).
[2] References to the docket are abbreviated as "ECF No. __." The "Complaint" or "Compl." refers to the complaint [ECF No. 3]. All emphasis is added, unless otherwise noted. Although Defendants recognize that Plaintiff's allegations must be taken as true for the purposes of determining whether a claim is properly pled, it vehemently disagrees with the facts alleged and the characterization of events in the Complaint.



**MIAMI** 100 Southeast 2nd Street, Suite 1200 • Miami, Florida 33131-2158 • 305 347 4040 tel   305 347 4050 fax
**FT. LAUDERDALE** 2500 Weston Road, Suite 220 • Weston, Florida 33331-3615 • 954 384 2500 tel   954 384 2510 fax
**TAMPA** 142 West Platt Street, Suite 118 • Tampa, FL 33606-2315 • 813-284-4002 tel

LASHGOLDBERG.COM

2017 ("ARPA"), imposes limited non-compete obligations on Plaintiff that are intended to protect the General Partner's investment. On the other hand, dissolution of the Partnership means that the fair market value of the ownership units would be nominal. Plaintiff wants to end the relationship, but it does not want to abide by the legitimate non-compete obligations that are consistent with Florida law. Recognizing this dilemma, Plaintiff forgoes attacking the non-compete under state law and instead masquerades contract claims as a federal antitrust case to undo its promises.  This ploy is as transparent as it is legally defective. The antitrust laws exist to protect competition—not individual competitors—as the Supreme Court and the Eleventh Circuit routinely observe. The Complaint should be dismissed for eleven reasons:

*First*, all of the antitrust claims fail because Plaintiff lacks antitrust standing as the Complaint does not plead a cognizable antitrust injury.

*Second*, all of the antitrust claims are deficient because the Complaint does not plead sufficient product and geographic markets.

*Third*, the claim under Section 1 of the Sherman Act, 15 U.S.C. § 1, also cannot stand because the Complaint does not allege (i) a conspiracy, (ii) anticompetitive effects, or (iii) the potential for genuine adverse effects on competition.

*Fourth*, the claim under Section 2 of the Sherman Act, 15 U.S.C. § 2, falls short because the Complaint does not allege (i) a dangerous probability of achieving monopoly power, (ii) anticompetitive conduct, or (iii) the requisite intent.

*Fifth*, because all of the Sherman Act claims must be dismissed, the Court lacks supplemental jurisdiction over the remaining state law claims.

2

Lash&Goldberg LLP
LASHGOLDBERG.COM

MIAMI 100 Southeast 2nd Street, Suite 1200  •  Miami, Florida  33131-2158  •  305 347 4040 tel   305 347 4050 fax
FT. LAUDERDALE 2500 Weston Road, Suite 220  •  Weston, Florida  33331-3615  •  954 384 2500 tel   954 384 2510 fax
TAMPA 142 West Platt Street, Suite 118  •  Tampa, FL 33606-2315  •  813-284-4002 tel

*Sixth*, the state antitrust claim fails for the same reasons as its federal counterparts.

*Seventh*, the fraud claim does not satisfy Rule 9(b)'s specificity requirement.

*Eight*, the tortious interference claim fails because the Complaint does not identify a cognizable business relationship with which Defendants interfered.

*Ninth*, the breach of contract claims cannot survive because Plaintiff lacks standing, nor does the Complaint identify material obligations that were breached.

*Tenth*, the breach of fiduciary duty claim likewise must be dismissed because Plaintiff lacks standing to bring this cause of action.

*Eleventh*, the Complaint is an improper shotgun pleading.

## II. BACKGROUND

The Partnership was formed in 1995. Compl. ¶ 10. Plaintiff (owned by twelve physicians) and the General Partner (affiliated with HCA Holdings, Inc.)[3] are its largest owners. *Id.*, Ex. 1, ARPA, Schedule A. The Partnership's purpose is to own and operate the Surgery Center (*Id.*, ARPA, Art. III), which provides cost-effective surgical services for outpatient same-day procedures, including orthopedics (*id.* ¶ 14).[4]

---

[3] HCA Holdings, Inc. is affiliated with HCA Healthcare, Inc.  Compl. ¶ 6.

[4] Outpatient surgery, also known as ambulatory surgery, is one that does not require an overnight stay for recovery. Such surgeries include, for example, tonsillectomies, hernia repairs, gallbladder removals, some cosmetic surgeries, and cataract surgeries.  Traditionally, outpatient procedures were performed in a hospital's outpatient department, yet a portion are now being done by ASCs. One of the primary reasons is cost. An insurer recently opined that ASCs can lower costs for outpatient procedures by 59%. A hospital charges more for the same outpatient procedure because of the overhead expenses that come with complying with more regulations, as well being equipped to handle a wide range of issues, including both low and high acuity cases (*i.e.*, severity of a patient's medical condition). ASCs offer a reduced-cost alternative to patients who want to undergo minor procedures during the day and recover at home rather than remain at a hospital for overnight observation.  Many ASCs have regular business hours unlike hospitals, which are open 24-hours a day.   While ASCs offer advantages to patients seeking routine procedures, the model can pose safety risks for high-risk patients seeking more complicated procedures. ASCs often are not able to handle higher-acuity cases or emergencies. That of


LASHGOLDBERG.COM

**MIAMI** 100 Southeast 2nd Street, Suite 1200  •  Miami, Florida  33131-2158  •  305 347 4040 tel   305 347 4050 fax
**FT. LAUDERDALE** 2500 Weston Road, Suite 220  •  Weston, Florida  33331-3615  •  954 384 2500 tel   954 384 2510 fax
**TAMPA** 142 West Platt Street, Suite 118  •  Tampa, FL 33606-2315  •  813-284-4002 tel

Both Plaintiff and the General Partner made a capital contribution to fund the Partnership. Compl., ARPA § 7.1. The General Partner also contributed the land on which the Surgery Center is located and the building from which it operates. *Id.* ¶ 24. It has been a profitable enterprise. *Id.* ¶ 28.  The ARPA was entered into at the desire of the parties and supported by consideration. ARPA, Recitals. Given the General Partner's substantial contributions, Plaintiff and its physician-owners, in an arms-length agreement, agreed to certain covenants, including, but not limited to, a narrowly tailored non-compete provision that prohibits ownership of a competing surgery center while Plaintiff owns an interest in the Partnership and for a two-year period thereafter within a 25-mile radius of the Surgery Center. *Id.* ¶ 48 & ARPA § 14.1. Plaintiff and its physician-owners acknowledge (i) that their covenants induced the General Partner to enter into the ARPA, (ii) that the non-compete was necessary to ensure the Partnership's continuation, and (iii) irreparable harm and damage would be caused if the non-compete is violated.  *Id.*

Plaintiff wants to form a competing ASC that is funded through the sale of its ownership units. *Id.* ¶¶ 32, 42. Plaintiff alleges "HCA specifically left out any guidance

---

course is because the entire model is based upon performing minor procedures in a low-cost environment. *See generally See* Johns Hopkins Medicine, *Outpatient Surgery*, available at: https://www.hopkinsmedicine.org/health/treatment-tests-and-therapies/outpatient-surgery; Kelsey Waddill, *How Ambulatory Surgery Centers Lower Payer Outpatient Spending*, Health Payer Intelligence (Sept. 8, 2021), available at: https://healthpayerintelligence.com/news/how-ambulatory-surgery-centers-lower-payer-outpatient-spending; Ambulatory Surgery Center Association, *Study: Medicare Cost Savings Tied to ASCs* (Sept. 10, 2013), available at: https://www.advancingsurgicalcare.com/reducinghealthcarecosts/medicarecostsavingstiedtoascs; Tim van Biesen, *et al.*, *Ambulatory Surgery Center Growth Accelerates: Is Medtech Ready?*, Bain & Company (Sept. 23, 2019), available at: https://www.bain.com/insights/ambulatory-surgery-center-growth-accelerates-is-m edtech-ready/; Definitive Healthcare, *Why Some Patients Face Higher Risks at Ambulatory Surgery Centers* (Oct. 2019), available at: https://www.definitivehc.com/blog/high-patient-risk-ambulatory-surgery-centers.

4

MIAMI 100 Southeast 2nd Street, Suite 1200 • Miami, Florida 33131-2158 • 305 347 4040 tel  305 347 4050 fax
FT. LAUDERDALE 2500 Weston Road, Suite 220 • Weston, Florida 33331-3615 • 954 384 2500 tel  954 384 2510 fax
TAMPA 142 West Platt Street, Suite 118 • Tampa, FL 33606-2315 • 813-284-4002 tel

in the ARPA regarding the sale of Partnership units in the event of a dissolution." *Id.* ¶ 42. Yet this allegation is belied by the ARPA's terms. Article XVI governs the sale of ownership units.[5] The ARPA contains a catch-all provision that governs situations like dissolution. *See id.* § 16.17. It provides the General Partner with the option to acquire Plaintiff's ownership interest under "Agreed Value" (*see* ARPA § 16.11) or for fair market value as determined by the "Third Party Valuation Process" (*see id.* § 16.9(b)). "Agreed Value" is backwards-looking, while fair market value measures market value of the asset. Where, like here, the Partnership is profitable but will be dissolved, "Agreed Value" generates a higher buy-out price than fair market value because the value of the ownership units is virtually worthless due to the Partnership's imminent dissolution. The General Partner's option in Section 16.17 is driven by compliance, namely, to avoid violating healthcare fraud laws like 42 U.S.C. § 1395nn (Physician Self-Referral Law) and 42 U.S.C. § 1320a-7n (Anti-Kickback Statute).

The General Partner also entered into a management agreement with the Partnership, dated April 1, 2017 ("Management Agreement"), to manage the Surgery Center on a day-to-day basis. Compl. ¶ 50 & Ex. B.

### III. LEGAL ARGUMENT

Plaintiff must plead sufficient facts "to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citation omitted). A complaint is plausible "when the … factual content … allows the court to draw the reasonable

---

[5] Right of first refusal (ARPA ¶ 16.2), marriage (*id.* ¶ 16.4), involuntary disposition (*id.* ¶ 16.5), failure to maintain medical credentials (*id.* ¶ 16.9(a)), death (*id.* ¶ 16.9(d)), permanent retirement (*id.*) and mental incapacity (*id.*).


LASHGOLDBERG.COM

MIAMI 100 Southeast 2nd Street, Suite 1200 • Miami, Florida 33131-2158 • 305 347 4040 tel   305 347 4050 fax
FT. LAUDERDALE 2500 Weston Road, Suite 220 • Weston, Florida 33331-3615 • 954 384 2500 tel   954 384 2510 fax
TAMPA 142 West Platt Street, Suite 118 • Tampa, FL 33606-2315 • 813-284-4002 tel

inference that the defendant is liable for the misconduct alleged." *Id.* (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 556 (2007)). As the Supreme Court explained in *Twombly*, a case involving the Sherman Act, neither "mere labels and conclusions," nor "a formulaic recitation of the elements of a cause of action will [suffice]." *Id.* 550 U.S. at 556-57. If the pleading lacks facts to "nudg[e] the[] claims across the line from conceivable to plausible, [it] … must be dismissed." *Id.* at 570. The Complaint here contains a litany of dispositive flaws, any one of which warrants its dismissal.

## 1. THE SHERMAN ACT CLAIMS FAIL AS A MATTER OF LAW

### A. Plaintiff Lacks Antitrust Standing[6]

As a preliminary matter, all of the antitrust claims (Counts I-IV) fail because Plaintiff does not plead harm to competition—a requirement to plead an antitrust injury. *See Todorov v. DCH Healthcare Auth.*, 921 F.2d 1438, 1449 (11th Cir. 1991).[7]

An "antitrust injury [is] the touchstone for antitrust standing." *Austin*, 903 F. 2d at 1389; *see also Brunswick Corp. v. Pueblo Bowl-O-Mat, Inc.*, 429 U.S. 477, 489 (1977) (the "antitrust injury" requirement derives from the fact that the antitrust laws "were enacted for the 'protection of competition[,] not competitors'") (citation omitted).

---

[6] Plaintiff must demonstrate antitrust standing in addition to Article III standing. *See Austin v. Blue Cross & Blue Shield of Ala.*, 903 F.2d 1385, 1387 (11th Cir. 1990). To do so, a plaintiff must demonstrate (1) that it suffered an antitrust injury, and (2) that it is an efficient enforcer of the antitrust laws. *See Ekbatani v. Cmty. Care Health Network, LLC*, 2022 WL 31793 at *1 (11th Cir. Jan. 4, 2022). The Complaint fails on both scores. With respect to the latter, to the extent Plaintiff alleges that HCA's actions have degraded the quality of service at the Surgery Center, Plaintiff, as an owner of the Partnership that in turn owns the Surgery Center, does not have standing to assert those claims on behalf of the Surgery Center. *See TI Inv. Servs., LLC v. Microsoft Corp.*, 23 F.Supp.3d 451, 459 (D.N.J. 2014).

[7] The Complaint also fails because Plaintiff fails to bring its claims under Section 4 of the Clayton Act, 15 U.S.C. § 15, which authorizes private rights of action under the Sherman Act. The Sherman Act does not alone create a private right of action. *See In re Publication Paper Antitrust Litig.*, 690 F.3d 51, 62 (2d Cir. 2012).



**MIAMI** 100 Southeast 2nd Street, Suite 1200 • Miami, Florida  33131-2158 • 305 347 4040 tel   305 347 4050 fax
**FT. LAUDERDALE** 2500 Weston Road, Suite 220 • Weston, Florida  33331-3615 • 954 384 2500 tel   954 384 2510 fax
**TAMPA** 142 West Platt Street, Suite 118 • Tampa, FL 33606-2315 • 813-284-4002 tel

"[A]ntitrust injuries include only those injuries that result from interference with the freedom to compete." *Johnson v. Univ. Health Servs., Inc.*, 161 F.3d 1334, 1338 (11th Cir. 1998). Where a complaint alleges harm to a specific competitor, dismissal is warranted. *See Spanish Broad. Sys. of Fla., Inc. v. Clear Channel Comms., Inc*. 376 F.3d 1065, 1069, 1072-73, 1079 (11th Cir. 2004) ("[A]n antitrust plaintiff must show harm to competition in general"); *Jacobs v. Tempur-Pedic Int'l, Inc.*, 626 F.3d 1327, 1339 (11th Cir. 2010) (same).

### i.   The Complaint Lacks Cognizable Allegations of Antitrust Injury

The Complaint does not contain any supportable allegations of harm to the marketplace as a whole. Allegations of harm to competition can include the alleged foreclosure of competitors or restrictions on the competitive process, such as an agreement that fixes prices paid by consumers. Although not synonymous with harm to competition, the effects of harm to competition can include allegations of higher prices, lower output, or deterioration of quality in the market. *Jacobs*, 626 F.3d at 1339.

Here, however, the Complaint lacks any factual allegations that competition has actually been harmed by the alleged conduct.  There are no allegations indicative of a reduction in competition or that there have been any effects arising out of harm to competition (*e.g.*, such as that the cost of orthopedic surgeries have increased, the quality of care has deteriorated for orthopedic surgeries, or the availability of orthopedic surgeries have decreased in the Sarasota area). There also are no allegations that any competitors have been foreclosed or prohibited from competing.  Plaintiff does not allege the identity of a single competitor (except itself) impacted by the alleged

7

Lash&Goldberg LLP
LASHGOLDBERG.COM

**MIAMI** 100 Southeast 2nd Street, Suite 1200 • Miami, Florida 33131-2158 • 305 347 4040 tel  305 347 4050 fax
**FT. LAUDERDALE** 2500 Weston Road, Suite 220 • Weston, Florida 33331-3615 • 954 384 2500 tel  954 384 2510 fax
**TAMPA** 142 West Platt Street, Suite 118 • Tampa, FL 33606-2315 • 813-284-4002 tel

conduct. The Complaint also fails to allege how many competitors are in the purported market; the strength of any competitor; or why Plaintiff's agreement not to own an interest in a competitor would result in higher prices, lower output, or a deterioration in quality.

The Complaint ultimately lacks a causal link between the General Partner's venture with Plaintiff and any supposed reduction in competition in the market. Plaintiff does not allege that HCA has the power to foreclose competition. The Complaint rather alleges that Plaintiff and its physician-owners are unable to own an interest in a competing venture. *See, e.g.*, Compl. ¶¶ 48, 88. But that allegation does not establish HCA has the power to foreclose competition, much less that it in fact did so. Restricting Plaintiff and its physician-owners' ability to own a competing venture (*see* ARPA § 14.1) does not prevent them from competing generally in the market, stop any other physicians from competing, or bar the entry of new competitors. There simply is no reduction of competition in the market and, as a result, no antitrust injury.

All of these glaring deficiencies warrant dismissal of the Sherman Act claims.

### ii.   The Allegations of Harm to Plaintiff Are Inapposite

Because the essence of this dispute is commercial in nature, the Complaint is packed with allegations of harm to Plaintiff and its investment, including about the Surgery Center's reputation, management, recruitment, turnover, scheduling, business decisions, efficiency, policies, maintenance, equipment, profitability, and buy-out terms. *See, e.g.*, Compl. ¶¶ 28-29, 32, 38-40, 53-56, 70. Yet such allegations are unavailing because they are not germane to the Sherman Act's aim, namely to protect

8

**MIAMI** 100 Southeast 2nd Street, Suite 1200 • Miami, Florida 33131-2158 • 305 347 4040 tel  305 347 4050 fax
**FT. LAUDERDALE** 2500 Weston Road, Suite 220 • Weston, Florida 33331-3615 • 954 384 2500 tel  954 384 2510 fax
**TAMPA** 142 West Platt Street, Suite 118 • Tampa, FL 33606-2315 • 813-284-4002 tel

competition, generally, not individual competitors.  Plaintiff's alleged "injury" is not the type that flows from a reduction in competition, as is required to establish antitrust standing. The Eleventh Circuit routinely dismisses antitrust claims for this reason:

> [Plaintiff] focuses upon the harm it allegedly suffered at the hands of [Defendants], such as weakened stock prices, restricted access to capital markets, loss of employees, damaged reputation, and loss of advertising revenue.  None of these allegations assert damage to competition itself.

*Spanish Broad. Sys.*, 376 F.3d at 1072.

### iii.   <u>The Conclusory Allegations of Harm Are Not Cognizable</u>

Well aware of the Complaint's shortcomings, Plaintiff relies upon conclusory allegations to bolster the pleading's facial conceivability. *See*, *e.g.*, Compl. ¶¶ 28 (HCA's conduct is "anti-competitive"); 30 ("HCA's scheme is a premeditated plan"); 32 (The scheme enables HCA to " assume control over the Sarasota orthopedic surgery market … and deter future competition"); 35 (HCA "is easily able to manipulate vendor pricing … and control the market salaries"); 57 ("The end goal of HCA's scheme is to reduce the number of market participants"); 76 ("HCA's strategy is to wrongfully stifle competition"); 80 ("the Sarasota orthopedic surgical market suffered … an antitrust injury"); 96 ("HCA's conduct … attempt[s] to monopolize the orthopedic surgery market in the Sarasota area").

But all of these allegations lack any shred of a factual underpinning, much less enough to nudge them across the line from speculative to plausible. Such threadbare allegations cannot withstand dismissal under *Twombly*. *See Procaps S.A.*, 845 F.3d at 1084 (a plaintiff "may not meet its burden of showing actual anticompetitive effects

Lash&Goldberg LLP
LASHGOLDBERG.COM

MIAMI 100 Southeast 2nd Street, Suite 1200 • Miami, Florida 33131-2158 • 305 347 4040 tel  305 347 4050 fax
FT. LAUDERDALE 2500 Weston Road, Suite 220 • Weston, Florida 33331-3615 • 954 384 2500 tel  954 384 2510 fax
TAMPA 142 West Platt Street, Suite 118 • Tampa, FL 33606-2315 • 813-284-4002 tel

with mere conclusory assertions"); *Aquatherm Indus., Inc. v. Fla. Power & Light Co.*, 971 F.Supp. 1419, 1429 (M.D. Fla. 1997) ("a bare bones statement … of injury under the antitrust laws without any supporting facts permits dismissal"); *Classic Soft Trim, Inc. v. Albert*, 2020 WL 6734402 at *9 (M.D. Fla. Aug. 13, 2020) (same).

A few other generalized allegations warrant further scrutiny. Plaintiff suggests that output was curtailed by alleging the number of surgeries performed at the Surgery Center decreased because they purportedly were diverted to the Hospital.  *See* Compl. ¶¶ 81, 92, 99. That, however, has nothing to do with the output of orthopedic surgeries in the market. In fact, the illogical allegation that the surgeries not performed at the Surgery Center were diverted to the Hospital means that output in the market did not change under Plaintiff's fictitious construct. Moreover, this allegation is not the type of harm that the antitrust laws are designed to protect against. Even taking Plaintiff's allegation to be true, diverting patients from one facility to another does not harm any competitors or change the competitive playing field at all.

Plaintiff also alleges that the scheme resulted in "reduced quality of care." Compl. ¶¶ 81, 92, 99.  Like the other barebones allegations, the Complaint adds no other details. If patients were diverted to the Hospital, why was the quality of care lower? Is the same surgeon performing the surgery at a different facility? If so, how does that affect the quality of care? If the Surgery Center suffered attrition, why does that mean the quality of care was reduced?  If Plaintiff and its physician-owners are prohibited from starting a competing venture, how is the quality of care impacted in

10

Lash&Goldberg LLP
LASHGOLDBERG.COM

MIAMI 100 Southeast 2nd Street, Suite 1200 • Miami, Florida 33131-2158 • 305 347 4040 tel   305 347 4050 fax
FT. LAUDERDALE 2500 Weston Road, Suite 220 • Weston, Florida 33331-3615 • 954 384 2500 tel   954 384 2510 fax
TAMPA 142 West Platt Street, Suite 118 • Tampa, FL 33606-2315 • 813-284-4002 tel

the market? The Complaint steers away from these requisites entirely. In any event, the unsupported allegations are not even indicative of harm to competition.

The Complaint also suggests that the quality of care was reduced because the Surgery Center has not implemented the 23-hour stay provision. *Id.* ¶¶ 28, 58-61, 81, 92, 99. But that is not a requirement. It just allows ASCs to perform higher-acuity cases. *Id.* ¶ 60; Fla. Stat. § 395.002(3). The Complaint assumes that the Surgery Center is capable of handling such procedures. At most, the alleged decision not to implement the provision means that the higher acuity surgeries were performed elsewhere in the market. Plaintiff concedes there are competitors to which the patients and surgeons may turn. Compl. ¶¶ 26, 28, 58, 61. The Complaint ultimately does not contain any allegations that connect the Surgery Center's inability to perform such procedures with a decrease in quality, let alone with a reduction of competition in the market.

Compounding the Complaint's many problems is the fact that its allegation that HCA enters into partnerships with its competitors to undermine them and divert patients to its hospitals (*id.* ¶¶ 29-31, 58) is devoid of any cognizable facts. Which partnerships were formed? With whom? When? Were the practices undermined? How? How did this affect competition in the market as whole? The upshot of the foregoing is that this allegation falls short of satisfying *Twombly's* pleading standard.[8]

---

[8] Plaintiff's citations to *William Alan Davis, et al. v. HCA Healthcare, Inc.*, No. 24-CV-03276 (N.C. Sup. Ct. 2021), *Florida ex rel. Crist v. HCA, Inc.,* No. 2:03-CV-177 (M.D. Fla. 2003), and *Schilling v. Columba/HCA Corp., et al.,* 1:99-CV-03289 (D.D.C. 1999), are inapposite. Compl. ¶32. *Davis* concerns allegations about inpatient and outpatient medical services in North Carolina, including purported "tying" arrangements with insurers. Absent from that complaint is a single reference to an ASC, much less an alleged scheme like the incoherent one alleged here. HCA Healthcare, Inc. moved to dismiss the allegations. As for *Florida ex rel. Crist*, that action was filed two decades ago, and the specific allegations were about price-fixing. The action resulted in a consent decree in

Lash&Goldberg LLP
LASHGOLDBERG.COM

MIAMI 100 Southeast 2nd Street, Suite 1200 • Miami, Florida 33131-2158 • 305 347 4040 tel   305 347 4050 fax
FT. LAUDERDALE 2500 Weston Road, Suite 220 • Weston, Florida 33331-3615 • 954 384 2500 tel   954 384 2510 fax
TAMPA 142 West Platt Street, Suite 118 • Tampa, FL 33606-2315 • 813-284-4002 tel

**B.  Each Sherman Act Claim Fails for Failure to Plead a Relevant Market**

Another fundamental defect that warrants dismissal of Counts I-IV is the Complaint's failure to adequately allege product and geographic markets.

Plaintiff must satisfactorily plead a relevant product and geographic market to survive dismissal. *See Jacobs*, 626 F.3d at 1336; *JES Props., Inc. v. USA Equestrian, Inc.*, 253 F.Supp.2d 1273, 1283 (M.D. Fla. 2003) (defining the market is plaintiff's burden). This is an essential requirement because it otherwise is impossible to plead harm to competition. *Id*. The product market must encompass "reasonably interchangeable substitutes." *Id*.; *see also Duty Free Ams., Inc. v. Estee Lauder Cos.*, 797 F.3d 1248, 1263 (11th Cir. 2015) (same). And the geographic market must consider "commercial realities faced by consumers," including "the geographic area in which consumers can practically seek alternative sources of the product." *JES Props., Inc.,* 253 F.Supp.2d at 1282. "Where an antitrust plaintiff fails to define its proposed relevant market with reference to rule of reasonable interchangeability and cross-elasticity of demand," the "relevant market is legally insufficient and a motion to dismiss may be granted." *Id*.

Here, Plaintiff defines the relevant market as "orthopedic surgical services market in the Sarasota, Florida area." *See* Compl. at 1; *id*. ¶¶ 5, 18, 23, 26-27, 29, 32-33. Nowhere in the Complaint are there any allegations plausibly supporting this definition. As for the product market, Plaintiff says nothing about the characteristics of orthopedic surgeries, including whether the market has distinct customers, unique

---

which HCA, Inc. and its affiliates denied any wrongdoing. *See id*., ECF No. 3. Finally, *Schilling* involved False Claims Act (31 U.S.C. § 3279) allegations. It had nothing to do with competition.

Lash&Goldberg LLP
LASHGOLDBERG.COM

**MIAMI** 100 Southeast 2nd Street, Suite 1200 • Miami, Florida  33131-2158 • 305 347 4040 tel   305 347 4050 fax
**FT. LAUDERDALE** 2500 Weston Road, Suite 220 • Weston, Florida  33331-3615 • 954 384 2500 tel   954 384 2510 fax
**TAMPA** 142 West Platt Street, Suite 118 • Tampa, FL 33606-2315 • 813-284-4002 tel

sensitivities to price changes, or specialized vendors. Why is the product market not limited to narrower specialties? Regarding the geographic market, the "Sarasota, Florida area" is ambiguous. Does it only encompass the City of Sarasota? Or does it include Sarasota County? Alternatively, does it include counties like Manatee and Charlotte to which Plaintiff points in paragraph 23 to suggest HCA has market power? Assuming Plaintiff's proposed geographic market is Sarasota County, the reliance on HCA's affiliated hospitals and ASCs in Manatee and Charlotte counties illustrates why the proposed market is too narrow. Nor does the Complaint, as it must, define the market with reference to the rule of reasonable interchangeability and cross-elasticity of demand. The Complaint simply assumes that other nearby counties are not markets to which orthopedic surgery patients may turn as an alternative if faced with a price increase in the Sarasota area.

In sum, the Complaint fails to state a viable antitrust claim because the proposed markets are unsustainable. *See Jacobs*, 626 F.3d at 1337 ("skimpy allegations" of market without "facts plausibly suggesting" definitions warranted dismissal).

### C. The Claims Under Section 1 of the Sherman Act Fail as a Matter of Law

In addition to the dispositive issues outlined, *supra* at Sections III(1)(2)(A)-(B), Counts I-II contain other insurmountable problems.

To establish a Section 1 violation, Plaintiff must show (i) a combination among two or more entities, and (ii) that unreasonably restrains trade. *See Todorov*, 921 F.2d at 1455, 1459; *Crosby v. Hosp. Auth. of Valdosta & Lowndes Cnty.*, 93 F.3d 1515, 1526

Lash&Goldberg LLP
LASHGOLDBERG.COM

MIAMI 100 Southeast 2nd Street, Suite 1200 • Miami, Florida 33131-2158 • 305 347 4040 tel  305 347 4050 fax
FT. LAUDERDALE 2500 Weston Road, Suite 220 • Weston, Florida 33331-3615 • 954 384 2500 tel  954 384 2510 fax
TAMPA 142 West Platt Street, Suite 118 • Tampa, FL 33606-2315 • 813-284-4002 tel

(11th Cir. 1996). Because this is not a *per se* case,[9] the purported unreasonableness of the restraint is governed by the "rule of reason." To establish an unreasonable restraint under the rule of reason, Plaintiff must allege anticompetitive effects in the market or, alternatively, that the conduct has the potential for adverse effects on competition. *See Spanish Broad. Sys.*, 376 F.3d at 1071.

### i.   The Complaint Does Not Sufficiently Allege an Agreement Between Two or More Parties

The Section 1 claim also fails because the principal allegation establishing a combination between two or more parties is flawed. *See Monsanto Co. v. Spray-Rite Serv. Corp.*, 465 U.S. 752, 761 (1984) ("Independent action is not proscribed" under § 1); *Levine*, 72 F.3d at 1545 ("[U]nilateral conduct is not illegal under section 1").

Plaintiff alleges that HCA attempts to control the market "through the … General Partner's efforts to conspire with the Hospital … [and] its parent corporation …." Compl. ¶¶ 79, 84. But "the coordinated activity of a parent and its wholly owned subsidiary must be viewed as that of a single enterprise." *Copperweld Corp. v. Indep. Tube Corp.*, 467 U.S. 752, 771 (1984); *St. Joseph's Hosp., Inc. v. Hosp. Corp. of Am.*, 795 F.2d 948, 956 (11th Cir. 1986) (same). Plaintiff concedes that the General Partner and Hospital are wholly owned subsidiaries of HCA.  Compl. ¶¶ 8, 16, 18, 76.  These

---

[9] *See Levine v. Cent. Fla. Med. Affiliates, Inc.*, 72 F.3d 1538, 1549 (11th Cir. 1996) ("The presumption in cases brought under section 1 of the Sherman Act is that the rule-of-reason standard applies.  We apply the *per se* rule only when history and analysis have shown that in sufficiently similar circumstances the rule of reason unequivocally results in a finding of liability") (citations omitted); *Jacobs*, 626 F.3d at 1334 (noting that *per se* cases are rare). Here, none of the antitrust claims purport to allege a *per se* antitrust violation, and the specific conduct at issue—like scheduling, hiring and maintenance decisions—does not meet the requirements for a *per se* violation. Unlike naked price-fixing, market division, or tying arrangements, restraints ancillary to a legitimate joint venture have the potential to be pro-competitive and, therefore, are analyzed under the rule of reason.  *See NCAA v. Bd. of Regents of the Univ. of Okla.*, 468 U.S. 85, 103 (1984).



**MIAMI** 100 Southeast 2nd Street, Suite 1200 • Miami, Florida  33131-2158 • 305 347 4040 tel   305 347 4050 fax
**FT. LAUDERDALE** 2500 Weston Road, Suite 220 • Weston, Florida  33331-3615 • 954 384 2500 tel   954 384 2510 fax
**TAMPA** 142 West Platt Street, Suite 118 • Tampa, FL 33606-2315 • 813-284-4002 tel

LASHGOLDBERG.COM

entities are legally incapable of conspiring together as a result. *See Wuesthoff Health Sys., Inc. v. Health First, Inc.*, 2007 WL 9719123 at *4 (M.D. Fla. Jan. 29, 2007) (dismissing Section 1 claim against affiliated hospitals).

Plaintiff tries to fix this problem by making passing references to "medical supply vendors" that purportedly were part of the conspiracy. *See* Compl. ¶¶ 79, 84. The Complaint, however, is replete with skeletal allegations like the ones rejected in *Twombly* about unidentified vendors. Compl. ¶¶ 28, 35, 41, 79, 81, 84, 92, 99, 121, 131, 142, 147-149, 150. Nowhere does the Complaint answer "the basic questions: who, did what, to whom (or with whom), where, and when?" *Kendall v. Visa U.S.A.*, 518 F.3d 1042, 1048 (9th Cir. 2008); *Duty Free Ams., Inc. v. Estee Lauder Cos.*, 946 F.Supp.2d 1321, 1332 (S.D. Fla. 2013); *YMD Records, LLC v. Ultra Enters., Inc.,* 361 F.Supp.3d 1258, 1264-65 (S.D. Fla. 2019) (dismissing Section 1 claim lacking "when and where" of agreement). All told, Plaintiff fails to plead facts raising a reasonable expectation that an illegal agreement will be revealed in discovery. This kind of formulaic pleading does not state a claim. *See Quality Auto Painting Ctr. of Roselle, Inc. v. State Farm Indem. Co.*, 917 F.3d 1249, 1261 (11th Cir. 2019) (finding Section 1 claim too speculative).

### ii.   The Complaint Fails to Plead Anticompetitive Effects

The Section 1 claim further fails because it does not plead anticompetitive effects in the orthopedic surgery market in the Sarasota area. All of the failures illustrated, *supra* at 6-11, apply with the same force here too.[10]

---

[10] Courts address competitive harm as a matter of antitrust standing or alternatively as an element of the substantive antitrust claims. *Compare Todorov*, 921 F.2d at 1449 (antitrust injury, defined as the anticompetitive



LASHGOLDBERG.COM

MIAMI 100 Southeast 2nd Street, Suite 1200 • Miami, Florida 33131-2158 • 305 347 4040 tel   305 347 4050 fax
FT. LAUDERDALE 2500 Weston Road, Suite 220 • Weston, Florida 33331-3615 • 954 384 2500 tel   954 384 2510 fax
TAMPA 142 West Platt Street, Suite 118 • Tampa, FL 33606-2315 • 813-284-4002 tel

Another foundational issue is Plaintiff's allegation that HCA purportedly diverted patients to the Hospital (Compl. ¶¶ 28-29, 31-32, 39, 57, 61) because it does not make economic sense. *See Williamson Oil Co. v. Philip Morris USA*, 346 F.3d 1287, 1302 (11th Cir. 2003) (a starting point for an antitrust claim is it must make "economic sense"). Absent from the Complaint are any allegations regarding how HCA forces surgeries to be performed at the Hospital, overriding a patient's prerogative to choose their surgeon, as well as their surgeon's discretion to select a site of service based upon their medical judgment. Plaintiff asks the Court to fill in the blanks. Indeed, the Complaint's fiction is only possible if Defendants were monopolists. As explained below, *see infra* at 21-24, Plaintiff does not cognizably allege either Defendant was a monopolist. Far from alleging monopolization, Plaintiff admits to the contrary by alleging that the orthopedic surgery market in the Sarasota Area is "competitive." Compl. ¶¶ 26, 28-29, 37, 42. Free market economics dictates that the alleged scheme would push the consumer back to the market in which price, efficiency, and quality drive consumption. *See N. Pac. Ry. Co. v. U.S.*, 356 U.S. 1, 4-5 (1958).

### iii.   The Complaint Fails to Plead the Potential for Effects on Competition

Equally fatal to the Section 1 claim are the Complaint's conclusory allegations of market power and the failure to link the existence of any such power to harm of consumer welfare given the unique realities of the proposed market.

---

effect of a violation, is required for standing), and *Pierson v. Orlando Reg'l Healthcare Sys., Inc.*, 619 F.Supp.2d 1260, 1276 (M.D. Fla. 2009) (finding no standing where complaint did not allege antitrust injury), *with Jacobs*, 626 F.3d at 1339-40 (failure to allege anticompetitive effects warranted dismissal), *and Glades Pharms., LLC v. Murphy*, 2006 WL 3694625 at *3 (N.D. Ga. Dec. 12, 2006) (same); *see also Levine*, 72 F. 3d at 1545 (same). The analysis is identical because the *sine qua non* to survive dismissal is harm to competition.

Lash&Goldberg LLP
LASHGOLDBERG.COM

MIAMI 100 Southeast 2nd Street, Suite 1200 • Miami, Florida 33131-2158 • 305 347 4040 tel   305 347 4050 fax
FT. LAUDERDALE 2500 Weston Road, Suite 220 • Weston, Florida 33331-3615 • 954 384 2500 tel   954 384 2510 fax
TAMPA 142 West Platt Street, Suite 118 • Tampa, FL 33606-2315 • 813-284-4002 tel

For there to be a genuine potential of adverse effects on competition, Plaintiff must define the market, allege the possession of market power, *i.e.*, "the ability to raise price significantly above the competitive level without losing all of one's business," *Graphic Prods. Distribs., Inc. v. Itek Corp.*, 717 F.2d 1560, 1570 (11th Cir. 1983), and make "specific allegations linking market power to harm to competition in that market." *Spanish Broad. Sys.*, 376 F.3d at 1073. The Complaint is bereft of such allegations. Plaintiff unsuccessfully tries to overcome this hurdle in three ways.

*First*, Plaintiff alleges on a conclusory basis that "HCA possesses an enormous market share" (Compl. ¶ 27) and "retains market power in the Sarasota area" (*id*. ¶¶ 28, 43, 88). Yet these naked allegations are insufficient to state a claim.

*Second*, to mask the market share deficiency, Plaintiff alleges that HCA is "big" and its "sheer size" enables it to pull off the scheme. Compl. ¶ 35. But such rhetoric cannot act as a proxy for market power.  *See Bay Area Surgical Mgmt., LLC v. Aetna Life Ins. Co.*, 2016 WL 3880989 at *10 (N.D. Cal. July 18, 2016) ("The fact that Defendants are 'goliaths' or 'dominant players' are nothing more than conclusory allegations and synonyms of Plaintiffs' deficient allegation"); *Duty Free Ams., Inc.*, 797 F.3d at 1270 ("[I]t is not enough for [the plaintiff] to allege that Estée Lauder is the top supplier").

*Third*, Plaintiff suggests that HCA possesses a meaningful market share for orthopedic surgeries in the Sarasota area. *Market share* may operate as a surrogate for *market power*. Using a sleight of hand, Plaintiff alleges that HCA owns four of the nine

17

Lash&Goldberg LLP
LASHGOLDBERG.COM

MIAMI 100 Southeast 2nd Street, Suite 1200 • Miami, Florida 33131-2158 • 305 347 4040 tel   305 347 4050 fax
FT. LAUDERDALE 2500 Weston Road, Suite 220 • Weston, Florida 33331-3615 • 954 384 2500 tel   954 384 2510 fax
TAMPA 142 West Platt Street, Suite 118 • Tampa, FL 33606-2315 • 813-284-4002 tel

hospitals in the Sarasota area (Compl. ¶ 26).[11] Noticeably missing from this allegation is the total number of hospitals and ASCs, the latter of which Plaintiff concedes compete. *Id.* ¶ 20.[12] The Complaint therefore does not identify the overall number of competitors. And participation does not equate to market share. The Complaint is silent on the number of surgeries that are performed in the market. Nor does Plaintiff allege the percentage of surgeries in the market for which HCA is responsible. *See U.S. Anchor Mfg., Inc. v. Rule Indus., Inc.*, 7 F.3d 986, 994 (11th Cir. 1993) ("[T]he principal judicial device for measuring actual or potential market power remains market share, typically measured in terms of percentage of total market sales").

Even assuming that Plaintiff properly alleged market power (and it does not), the Complaint still fails to cognizably plead the potential for adverse effects on competition because it does not address why the alleged conduct could harm competition in the market, such as the structure of the market. *See Spanish Broad. Sys.*, 376 F.3d at 1073 (a plaintiff must also demonstrate that intrabrand competition is a critical source of competitive pressure on consumer welfare).

### D. The Section 1 Claim Based Upon the ARPA Fails as a Matter of Law

To the extent that Count II alleges the ARPA's non-compete provision is the conduct that violates the Sherman Act (which is hardly clear given the ambiguous

---

[11] The Complaint alleges that there are eight private and one public hospitals in the market. Public hospitals compete in the marketplace. *See F.T.C. v. Hosp. Bd. of Dirs. of Lee Cnty.*, 38 F.3d 1184 (11th Cir. 1994).

[12] This omission undoubtedly is intentional, as Florida's Agency for Health Care Administration, which regulates hospitals and ASCs, identifies on its publicly-accessible database (https://www.floridahealthfinder.gov/facilitylocator/FacilitySearch.aspx) all ASCs in each county, including, without limitation, Sarasota, Manatee, Charlotte, Lee, Pinellas and Hillsborough. A cursory review reveals the *actual* reason that the Complaint blatantly elects not to mention the number of ASCs in Sarasota County and the surrounding areas.

Lash&Goldberg LLP
LASHGOLDBERG.COM

**MIAMI** 100 Southeast 2nd Street, Suite 1200 • Miami, Florida 33131-2158 • 305 347 4040 tel   305 347 4050 fax
**FT. LAUDERDALE** 2500 Weston Road, Suite 220 • Weston, Florida 33331-3615 • 954 384 2500 tel   954 384 2510 fax
**TAMPA** 142 West Platt Street, Suite 118 • Tampa, FL 33606-2315 • 813-284-4002 tel

allegations), the claim does not salvage the Complaint, as it is not cognizable for the same reasons set forth, *supra* at Sections III(1)(2)(A)-(B).[13]

Non-competes ancillary to an arms-length transaction, like the one here (*see* Compl., Exs. 1, 4), are analyzed under the rule of reason. *See Consultants & Designers, Inc. v. Butler Serv. Grp., Inc.*, 720 F.2d 1553, 1562 (11th Cir. 1983) (non-competes are to be judged under the rule of reason and the plaintiff must establish the covenant adversely impacted competition); *Lektro-Vend Corp. v. Vendo Co.*, 660 F.2d 255 (7th Cir. 1981) (same); *Bus. Elecs. Corp. v. Sharp Elecs. Corp.*, 485 U.S. 717, 729 n.3 (1988) ("The classic ancillary restraint is an agreement by the seller of a business not to compete").

Count II is not viable because Plaintiff and its physician-owners made a contractual choice under their own volition to partly remove themselves from owning a competitor. Compl., Ex. 1. Nowhere does the Complaint allege that Plaintiff signed the ARPA for any reason other than its own self-interest, such as due to threats or predatory conduct. The only injury that Plaintiff complains of is derived from the reasonable and legitimate non-compete provision. *Id.* ¶ 48 & ARPA § 14.1. That

---

[13] Note that Plaintiff does not even attempt to challenge the narrowly tailored non-compete for violating Fla. Stat. § 542.335. That is because its scope is limited to the ownership of a facility where surgical procedures are performed, within 25-miles of the Surgery Center, and for a two-year period following the sale of an ownership interest. ARPA § 14.1. Where, like here, the seller of a partnership interest agrees not to compete, Florida law presumes any time restraint 3 years or less is reasonable. *See* Fla. Stat. § 542.335(1)(d)(3). Courts regularly uphold the geographic scope of non-competes like the one contained in the ARPA. *See, e.g., Orkin Extermination Co., Inc. v. Bailey*, 550 So.2d 563 (Fla. 4th DCA 1989). Florida law also recognizes a legitimate interest in "[c]ustomer, patient, or client goodwill associated with … [a] specific geographic location" (Fla. Stat. § 542.335(1)(b)(4)(b)) and "[s]ubstantial relationships with specific prospective or existing customers, patients, or client" (*id.* § 542.335(1)(b)(3)). *See Ansaarie v. First Coast Cardiovascular Inst., P.A.*, 252 So.3d 287, 290-91 (Fla. 1st DCA 2018) (recognizing hospital's relationship with existing patients and its substantial investment in developing such relationship as protected legitimate business interests). Plaintiff even acknowledges that the non-compete was "necessary to ensure the continuation of the business of the Partnership" and "irreparable harm and damage [would] be done" if it competed with the Partnership. ARPA § 14.1

19

**Lash & Goldberg** LLP

LASHGOLDBERG.COM

**MIAMI** 100 Southeast 2nd Street, Suite 1200 • Miami, Florida  33131-2158 • 305 347 4040 tel   305 347 4050 fax
**FT. LAUDERDALE** 2500 Weston Road, Suite 220 • Weston, Florida  33331-3615 • 954 384 2500 tel   954 384 2510 fax
**TAMPA** 142 West Platt Street, Suite 118 • Tampa, FL 33606-2315 • 813-284-4002 tel

simply does not constitute an antitrust injury. *See McDonald v. Johnson & Johnson*, 722 F.2d 1370, 1378 (8th Cir. 1983) (dismissing antitrust claims because any limitation on competition by reason of "the agreements not to compete was only brought about by plaintiffs' voluntary and negotiated contractual choice").

A close inspection of the non-compete dispels Plaintiff's core attack: the non-compete only restricts Plaintiff and its physician-owners from owning a competing surgery center within twenty-five miles of the Surgery Center for a two-year period following the sale of its ownership interest. *See id.*, ARPA § 14.1. The physicians notably are free right now to perform their outpatient cases at any facility without restriction, including ones owned by competitors, and they are able to enter into employment relationships with competitors too. *Id.* Plaintiff therefore has not even been fully removed from the orthopedic surgery market in Sarasota.

In the end, the unsupported allegations that the covenant "removes competitors" (Compl. ¶ 33) from the market and "deter[s] future competition" (*id.* ¶ 32; *see also id.* ¶¶ 43, 45, 88) are not sufficient to state a claim. *See GTE Data Servs., Inc. v. Elec. Data Sys. Corp.*, 717 F.Supp. 1487, 1492 (M.D. Fla. 1989) (dismissing complaint alleging non-compete agreement violated Section 1 of the Sherman Act because the plaintiff did not allege "the amount of competition foreclosed by defendant" to demonstrate harm to the market as a whole). The failure to allege anticompetitive effects or the potential for genuine adverse effects on competition dooms Count II. *See Consultants & Designers, Inc.*, 720 F.2d at 1562 ("The relevant inquiry is not whether [the defendant's] present attempt to exclude [by virtue of the non-compete] adversely

20

Lash&Goldberg LLP
LASHGOLDBERG.COM

MIAMI 100 Southeast 2nd Street, Suite 1200 • Miami, Florida 33131-2158 • 305 347 4040 tel  305 347 4050 fax
FT. LAUDERDALE 2500 Weston Road, Suite 220 • Weston, Florida 33331-3615 • 954 384 2500 tel  954 384 2510 fax
TAMPA 142 West Platt Street, Suite 118 • Tampa, FL 33606-2315 • 813-284-4002 tel

impacts competition but rather whether its acquisition of the power to exclude competitors had a sufficiently adverse impact on competition").

### E. The Sherman Act Section 2 Claim Fails

Beyond the infirmities set forth, *supra* at Sections III(1)(2)(A)-(B), the attempted monopolization claim (Count III; *see* Compl. ¶ 96) fares no better because the Complaint fails to allege (i) a dangerous probability of achieving monopoly power, *i.e.*, the power to "exclude competition in the relevant market either by restricting entry of new competitors or by driving existing competitors out of the market," *Duty Free Americas, Inc*. 797 F.3d at 1264, (ii) predatory conduct, or (iii) a specific intent to monopolize. *See Spectrum Sports, Inc. v. McQuillan*, 506 U.S. 447, 456 (1993).

*First*, the Complaint's failure to allege market power under Section 1 means it misses the mark by an even wider margin for Section 2. *See Eastman Kodak Co. v. Image Tech. Servs., Inc.*, 504 U.S. 451, 481 (1992) ("Monopoly power under § 2 requires, of course, something greater than market power under § 1"). As discussed above, the Complaint does not allege the purported market share that HCA possesses. Plaintiff instead relies on rhetoric like HCA is "big." Compl. ¶ 35. That itself compels dismissal of the attempted monopolization claim. *See Lavender Health Care, LLC v. Redstone LLC*, 2021 WL 4169796 at *8 (M.D. Fla. Sept. 14, 2021) (conclusory allegations of attempted monopolization are not sufficient to state a claim); *Aquatherm Indus., Inc.*, 971 F.Supp. at 1427 (failure to allege probability of success requires dismissal).[14]

---

[14] Although the Complaint concedes that hospitals and ASCs compete for outpatient orthopedic surgeries, Plaintiff merely alleges that HCA owns four of the nine hospitals in the market. Compl. ¶ 26. But even under

Lash & Goldberg LLP
LASHGOLDBERG.COM

MIAMI 100 Southeast 2nd Street, Suite 1200 • Miami, Florida 33131-2158 • 305 347 4040 tel   305 347 4050 fax
FT. LAUDERDALE 2500 Weston Road, Suite 220 • Weston, Florida 33331-3615 • 954 384 2500 tel   954 384 2510 fax
TAMPA 142 West Platt Street, Suite 118 • Tampa, FL 33606-2315 • 813-284-4002 tel

Plaintiff also pleads itself out of Court by alleging that the orthopedic surgery Market in the Sarasota area is "competitive" (Compl. ¶¶ 42, 93), it is mobilizing to compete with the Partnership (*id.* ¶¶ 32, 42, 43, 46, 76, 88-89, 96), and the only barrier to entry is the reasonable non-compete provision (*id.* ¶¶ 32, 43, 89). The Complaint thus concedes HCA cannot exert monopoly power, prevent orthopedic surgeons from entering the market, or stop Plaintiff from owning a competitor once the covenant expires. In other words, Plaintiff recognizes that HCA has not erected any barriers to entry. It is powerless to prevent competitors from competing in the market. That too is fatal to the attempted monopolization claim. *See Godix Equip. Export Corp. v. Caterpillar, Inc.*, 948 F.Supp. 1570, 1996 (S.D. Fla. 1996) (plaintiff failed to show it "could exclude competition in the interbrand market"); *Thomas Home Corp. v. Reve Dev. Corp.*, 2005 WL 8164951 at *6 (N.D. Fla. Mar. 18, 2005) (dismissing claim given ease of market entry and for failing to "allege that [defendant] ha[d] the power to … exclude competition"); *Appleton v. Intergraph Corp.*, 627 F.Supp.2d 1342, 1356 (M.D. Ga. 2008) (dismissing antitrust claim where complaint, which alleged the existence of "alternative solutions," showed that "competition continues to exist"); *Pierson*, 619 F.Supp.2d at 1281 (dismissing attempted monopolization claim because there were

---

this artificially narrow construct, Plaintiff fails to allege a dangerous probability of acquiring monopoly power. Where an alleged monopolist's "market share is less than 50% of the relevant market, there is no dangerous probability of success … as [a] matter of law." *Iris Wireless LLC v. Syniverse Tech.*, 49 F.Supp.3d 1022, 1031 (M.D. Fla. 2014) (citing *Gulf States Reorganization Grp., Inc. v. Nucor Corp.*, 822 F.Supp.2d 1201 (N.D. Ala. 2011), *aff'd*, 721 F. 3d 1281 (11th Cir. 2013)); *U.S. Anchor Mfg., Inc.*, 7 F. 3d at 1001 (possessing less than 50% of market means there is no dangerous probability of monopolization).

Lash&Goldberg LLP
LASHGOLDBERG.COM

MIAMI 100 Southeast 2nd Street, Suite 1200 • Miami, Florida 33131-2158 • 305 347 4040 tel  305 347 4050 fax
FT. LAUDERDALE 2500 Weston Road, Suite 220 • Weston, Florida 33331-3615 • 954 384 2500 tel  954 384 2510 fax
TAMPA 142 West Platt Street, Suite 118 • Tampa, FL 33606-2315 • 813-284-4002 tel

"numerous other hospitals in central Florida, as well as other outlets for the provision of such services").

*Second*, the Complaint lacks any cognizable allegations that HCA engaged in any predatory conduct. Plaintiff complains about a non-compete provision to which it agreed in an arms-length agreement—a covenant that Plaintiff agrees was "necessary to ensure the continuation of the … Partnership." ARPA § 14.1. Legitimate business practices, however, are not predatory. *See Great Escape, Inc. v. Union City Body Co., Inc.*, 791 F.2d 532, 541 (7th Cir. 1986) (defining predatory conduct as that which "is in itself an independent violation of the antitrust laws or that has no legitimate business justification"); *Tech. Res. Servs., Inc. v. Dornier Med. Sys., Inc.,* 134 F.3d 1458, 1467 (11th Cir. 1998) ("A defendant can escape § 2 liability if the defendant's actions can be explained by legitimate business justifications"); *Nat'l Soc'y of Prof'l Eng'rs v. U.S.*, 435 U.S. 679, 688 (1978) (noting the recognized benefits of reasonably enforced noncompetition covenants are beyond question). Nor are the Complaint's meritless fraud and tortious interference claims or the naked allegations about HCA's purported scheme to enter into partnerships with its competitors to hamstring them sufficient. *See Duty Free Americas*, 797 F.3d at 1265.

*Third*, the Complaint fails to allege that the purpose of HCA's conduct is to acquire monopoly power. *See Sulmeyer v. Coca Cola Co.*, 515 F.2d 835 (5th Cir. 1975). Plaintiff's bare allegations that HCA intended to monopolize the orthopedic surgery market (Compl. ¶¶ 28, 30, 96) are not adequate. *See Fin-S Tech, LLC v. Surf Hardware Int'l-USA, Inc.*, 2014 WL 12461350 at *4 (S.D. Fla. Aug. 27, 2014) (specific intent to

23

Lash&Goldberg LLP
LASHGOLDBERG.COM

MIAMI 100 Southeast 2nd Street, Suite 1200 • Miami, Florida 33131-2158 • 305 347 4040 tel   305 347 4050 fax
FT. LAUDERDALE 2500 Weston Road, Suite 220 • Weston, Florida 33331-3615 • 954 384 2500 tel   954 384 2510 fax
TAMPA 142 West Platt Street, Suite 118 • Tampa, FL 33606-2315 • 813-284-4002 tel

monopolize allegations were conclusory). Plaintiff further alleges that the scheme's objective was to "deter future competition" (Compl. ¶ 32) and "reduce the number of market participants" (*id*. ¶ 57).  But the intent to gain market share does not suffice to plead specific intent. *See U.S. Steel Corp. v. Fortner Enters., Inc.*, 429 U.S. 610 (1977).

### 2.  THE FLORIDA ANTITRUST CLAIM FAILS AS A MATTER OF LAW

Count IV likewise fails for the reasons set forth, *supra* at Sections III(1)-(2)(A)-(B), as it incorporates the same allegations relating to the federal counts. *See* Compl. ¶ 101; *Andrx Pharms., Inc. v. Elan Corp., PLC,* 421 F.3d 1227, 1233 n.5 (11th Cir. 2005).

### 3.  COUNTS IV-IX LACK SUPPLEMENTAL JURISDICTION

Because the federal claims do not pass muster (Counts I-III), the Court should exercise its discretion and decline supplemental jurisdiction over the state claims (Counts IV-IX). *Bruce v. U.S. Bank Nat. Ass'n.*, 770 Fed.App'x 960, 966 (11th Cir. 2019).

### 4.  THE INTERFERENCE CLAIM FAILS AS A MATTER OF LAW

The tortious interference claim (Count VIII) cannot survive because it is inextricably intertwined with the defective antitrust claims (Counts I-IV) and given Plaintiff's failure to plead a cognizable business relationship.

A tortious interference claim based upon allegations of anticompetitive conduct is not viable unless the antitrust cause of action survives.  *See Metzler v. Bear Auto. Serv. Equip. Co.*, 19 F.Supp.2d 1345, 1364 (S.D. Fla. 1998). Here, Count VIII is solely based upon the unavailing antitrust claims.  *See* Compl. ¶ 150 (Plaintiff alleges that "HCA …

24

**Lash&Goldberg**LLP
LASHGOLDBERG.COM

**MIAMI** 100 Southeast 2nd Street, Suite 1200 • Miami, Florida  33131-2158 • 305 347 4040 tel  305 347 4050 fax
**FT. LAUDERDALE** 2500 Weston Road, Suite 1200 • Weston, Florida  33331-3615 • 954 384 2500 tel  954 384 2510 fax
**TAMPA** 142 West Platt Street, Suite 118 • Tampa, FL 33606-2315 • 813-284-4002 tel

*through its anti-competitive conduct* … interfered with Plaintiff's doctor, patient and vendor relationships"). Count VIII therefore fails and must be dismissed.

The tortious interference claim also is not cognizable because Plaintiff does not sufficiently allege the existence of a business relationship. Plaintiff alleges that Defendants interfered with patient, medical staff, and vendor relationships. *See* Compl. ¶¶ 147, 149, 150. Nowhere, however, does the Complaint point to a single relationship or contract that was lost. These empty allegations do not state a claim. *See Dunn v. Air Line Pilots Ass'n*, 193 F.3d 1185, 1191 (11th Cir. 1999) (affirming dismissal where plaintiff failed to allege specific business relationship with particular third party).

## 5. THE FRAUD CLAIM FAILS AS A MATTER OF LAW

The fraud claim (Count IX) fails because the Complaint lacks the particularity that Rule 9(b) requires, plus it does not contain any cognizable misstatements of fact.

*First*, Rule 9(b) requires more than mere conjecture. A complaint must state the "who, what, when, where, and how" of the alleged misconduct. *See Garfield v. NDC Health Corp.*, 466 F.3d 1255, 1262 (11th Cir. 2006). The Complaint here alleges that Defendants induced Plaintiff to enter into the ARPA with no intention of performing thereunder. But the Complaint is devoid of any factual details that support this allegation. When was the alleged scheme hatched? By whom? Who participated in the negotiations? When did they occur? What representations were made? The Complaint is silent on these issues. And not a single person involved in the purported scheme is identified in the Complaint's 160-paragraphs. *See Milazzo v. First Liberty Ins. Co.*, 2021

Lash&Goldberg LLP
LASHGOLDBERG.COM

MIAMI 100 Southeast 2nd Street, Suite 1200 • Miami, Florida 33131-2158 • 305 347 4040 tel   305 347 4050 fax
FT. LAUDERDALE 2500 Weston Road, Suite 220 • Weston, Florida 33331-3615 • 954 384 2500 tel   954 384 2510 fax
TAMPA 142 West Platt Street, Suite 118 • Tampa, FL 33606-2315 • 813-284-4002 tel

WL 5843073 at *2 (M.D. Fla. Dec. 9, 2021) (Rule 9(b) requires that the "alleged statements or omissions must be 'attributed to a specific person,' not a corporate entity"). Thus, Plaintiff commits Rule 9(b)'s cardinal sin by flagrantly omitting these details. Count IX should be dismissed.

*Second*, the fraud claim also cannot withstand dismissal because the Complaint does not plead a misrepresentation of fact. *See Fla. Evergreen Foliage v. E.I. DuPont De Nemours & Co.*, 336 F.Supp.2d 1239, 1284 (S.D. Fla. 2004) (outlining fraud standard), *aff'd* 470 F.3d 1036 (11th Cir. 2006). A misrepresentation "must concern a past or existing fact." *Gemini Invs. III, L.P. v. Nunez*, 78 So.3d 94, 97 (Fla. 3d DCA 2012). Yet the only misrepresentations to which the Complaint points are ones found in the ARPA. *See* Compl. ¶¶ 155, 158. Those, however, constitute promises of future performance. Plaintiff's bald allegation that the General Partner did not intend to perform does not cure this deficiency. *See XP Global, Inc. v. AVM, L.P.*, 2016 WL 4987618 at *8 (S.D. Fla. Sept. 19, 2016) (ruling conclusory allegation that defendant did not intend to perform future obligation failed to plead fraud claim).

### 6. THE FIDUCIARY DUTY CLAIM FAILS AS A MATTER OF LAW

The breach of fiduciary duty claim (Count VII) must be dismissed because Plaintiff does not have standing to bring this claim directly. A limited partner, on rare occasions, "may maintain a direct action against the limited partnership or another partner," but it "is required to plead and prove an actual or threated injury that is not solely the result of an injury suffered or threatened to be suffered by the limited partnership." Fla. Stat. § 620.2001(1)-(2).

26

Lash&Goldberg LLP

LASHGOLDBERG.COM

MIAMI 100 Southeast 2nd Street, Suite 1200 • Miami, Florida 33131-2158 • 305 347 4040 tel   305 347 4050 fax
FT. LAUDERDALE 2500 Weston Road, Suite 220 • Weston, Florida 33331-3615 • 954 384 2500 tel   954 384 2510 fax
TAMPA 142 West Platt Street, Suite 118 • Tampa, FL 33606-2315 • 813-284-4002 tel

Here, Plaintiff alleges a breach fiduciary duty based upon the purported anticompetitive conduct. *See* Compl. ¶¶ 138-143.[15] The alleged harm pertains to the Surgery Center, including reducing its overall quality and efficiency (*id.* ¶ 138), frustrating recruitment (*id.* ¶ 139), and restricting scheduling (*id.* ¶ 140).[16] All of these alleged injuries are suffered by the Partnership. *See id.*, ARPA, Art. III. Plaintiff is not the only limited partner who sustained the purported damages. *See id.*, ARPA, Schedule A.  At best, the alleged injury is indirect. The breach of fiduciary claim fails. *See Fend v. Walsh,* 2020 WL 5822420 at *15 (S.D. Fla. Sept. 14, 2020) (dismissing state claims pled directly because "injuries allegedly flow[ed] directly from harm to [partnership]"), *report and recommendation adopted*, 2020 WL 5819615, at *1 (S.D. Fla. Sept. 30, 2020); *Fritz v. Fritz*, 219 So.3d 234, 238 (Fla. 3d DCA 2017) (affirming dismissal of fiduciary claim because partnership suffered injury).[17]

## 7.  THE CONTRACT CLAIM (ARPA) FAILS AS A MATTER OF LAW

The breach of contract claim under the ARPA (Count V) must be dismissed because the Complaint does not identify a single material obligation that was violated.

*First,* Plaintiff alleges that the anti-competitive conduct breached Article III of the ARPA.  Compl. ¶ 116. But Article III is a statement of "purpose" under which there is no obligation, much less a material one.  *See id.*, ARPA, Art. III. *See Roman v.*

---

[15] The General Partner does not owe Plaintiff a fiduciary duty under the Management Agreement.

[16] Paragraph 142 alleges the anti-competitive conduct violated a fiduciary duty by deterring vendors from offering competitive pricing. This allegation is conclusory and belied by the APRA's terms as Plaintiff, a limited partner, plays no role in the operation of the Surgery Center.  *See* ARPA § 13.1 ("No Limited Partner … shall participate in the active management or control of the Partnership's business").

[17] Count VII cannot survive dismissal against HCA because the Complaint's allegations and its attachments make clear that HCA is not—nor has it ever been—in a fiduciary relationship with Plaintiff.



**MIAMI** 100 Southeast 2nd Street, Suite 1200  •  Miami, Florida  33131-2158  •  305 347 4040 tel   305 347 4050 fax
**FT. LAUDERDALE** 2500 Weston Road, Suite 220  •  Weston, Florida  33331-3615  •  954 384 2500 tel   954 384 2510 fax
**TAMPA** 142 West Platt Street, Suite 118  •  Tampa, FL 33606-2315  •  813-284-4002 tel

*LoanDepot.com, LLC*, 387 F.Supp.3d 1389, 1396 (M.D. Fla. 2019) (finding provision on which breach of contract claim relied did not impose legal obligation).

*Second*, the Complaint alleges elsewhere that the conduct at issue violated the APRA. Compl. ¶¶ 117-121. Except for paragraph 116 (which imposes no obligation), Plaintiff does not identify a specific section of the APRA that was breached. Count V therefore fails. *See Herssein Law Grp. v. Reed Elsevier, Inc.*, 594 Fed. App'x 606, 608 (11th Cir. 2015) ("It is a basic tenet of contract law that a party can only advance a claim for breach of written contract by identifying and presenting the actual terms of the contract allegedly breached"); *Cruz v. Underwriters at Lloyd's London*, 2014 WL 3809179 at *2 (M.D. Fla. Apr. 1, 2014) (same).

## 8. THE CONTRACT CLAIM (MANAGEMENT AGREEMENT) FAILS AS A MATTER OF LAW

The contract claim under the Management Agreement (Count VI) falls short because Plaintiff is neither a party to it, nor an intended third party beneficiary. The Complaint also does not identify any material obligations that were violated.

*First*, the Management Agreement is a contract between the Partnership, on one hand, and the General Partner, on the other hand. *See* Compl., Ex. 2. Plaintiff thus does not have standing to bring this claim directly. Nor is Plaintiff an intended third-party beneficiary. The Management Agreement makes clear that "it is not the intention of the parties to confer third-party beneficiary rights upon any other person or entity." Compl., Ex. 2, § 23.  Count VI should be dismissed.  *See Tarpon Transp. Servs., Inc. v. Total Quality Logistics, LLC*, 2021 WL 3111641 at *2 (M.D. Fla. July 22, 2021) ("An

28

**MIAMI** 100 Southeast 2nd Street, Suite 1200  •  Miami, Florida  33131-2158  •  305 347 4040 tel   305 347 4050 fax
**FT. LAUDERDALE** 2500 Weston Road, Suite 220  •  Weston, Florida  33331-3615  •  954 384 2500 tel   954 384 2510 fax
**TAMPA** 142 West Platt Street, Suite 118  •  Tampa, FL 33606-2315  •  813-284-4002 tel

entity who is not a party to or an intended beneficiary of a contract cannot sue or enforce to interpret a contract").

*Second*, Plaintiff cannot bring this claim in its capacity as a limited partner of the Partnership because, again, the purported breach is indirect. *See supra* at 26-27.

*Third*, even if standing exists, Plaintiff's allegation that the purported anticompetitive conduct breached Section 1.1 of the Management Agreement because it did not "properly operate the Surgery Center in accordance with the duties specifically detailed [therein]" is legally defective. Section 1.1 outlines services for which the General Partner is responsible, but there are no duties or standards therein— unlike other provisions. *See, e.g.,* Management Agreement §§ 1.2, 1.7. The General Partner's obligation is to furnish the services. Plaintiff does not allege that any service was not rendered. Instead, it complains in hindsight about the General Partner's decisions, such as the purported choice not to expand the hours of operation. Compl. ¶¶ 28, 38, 57, 61. Dissatisfaction, however, does not violate Section 1.1's terms.

*Fourth*, the Complaint's allegation that the General Partner breached Section 1.5 of the Management Agreement "by actively serving the benefits of HCA and the Hospital instead of the Partnership" (Compl. ¶ 127) also fails. Section 1.5 addresses the General Partner's duty in its handling of Partnership funds, and the Complaint does not allege that the General Partner misappropriated any Partnership property.  In any case, even under Plaintiff's distorted construction, the claim is not viable. Plaintiff's construction is dispelled by the Management Agreement's and the ARPA's plain terms. The Management Agreement specifies that the General Partner is subject

29

Lash&Goldberg LLP
LASHGOLDBERG.COM

MIAMI 100 Southeast 2nd Street, Suite 1200  •  Miami, Florida  33131-2158  •  305 347 4040 tel   305 347 4050 fax
FT. LAUDERDALE 2500 Weston Road, Suite 220  •  Weston, Florida  33331-3615  •  954 384 2500 tel   954 384 2510 fax
TAMPA 142 West Platt Street, Suite 118  •  Tampa, FL 33606-2315  •  813-284-4002 tel

to the ARPA, and Plaintiff does not have a cause of action thereunder as a matter of law. *See* ARPA §§ 14.1, 15.1, 15.2, 15.6.

*Sixth*, Section 9.2 of the Management Agreement also cannot sustain a breach of contract action.  That provision simply defines *when* the General Partner is in default and *how* the parties are supposed to proceed regarding notice and remediation. The bottom line is that Section 9.2 does not impose any substantive obligations.

## 9.  THE COMPLAINT IS AN IMPROPER SHOTGUN PLEADING

The Complaint finally should be dismissed in its entirety as a shotgun pleading. The Complaint defines HCA Holdings, Inc. and Doctors Same Day Surgery Center, Inc. as "HCA," making the entities an indistinguishable monolith. Lumping HCA and the General Partner together produces situations in which it is unclear to whom Plaintiff intends to refer. *See*, *e.g.*, *id*. ¶¶ 84-93, 96-99, 102, 106-112, 115-122, 125-132, 135-144, 148-151, 154-159. The Complaint should also be dismissed for this reason. *See Weiland v. Palm Beach Cnty. Sheriff's Off.*, 792 F.3d 1313, 1323 (11th Cir. 2015).

## IV. CONCLUSION

For these reasons, Defendants respectfully request that this Court enter an Order: (1) dismissing the Complaint against Defendants in its entirety for failure to state a claim upon which relief may be granted, and (2) awarding Defendants any other relief that the Court deems just and appropriate under the circumstances.

Lash&Goldberg LLP
LASHGOLDBERG.COM

**MIAMI** 100 Southeast 2nd Street, Suite 1200  •  Miami, Florida  33131-2158  •  305 347 4040 tel   305 347 4050 fax
**FT. LAUDERDALE** 2500 Weston Road, Suite 220  •  Weston, Florida  33331-3615  •  954 384 2500 tel   954 384 2510 fax
**TAMPA** 142 West Platt Street, Suite 118  •  Tampa, FL 33606-2315  •  813-284-4002 tel

## Local Rule 3.01(g) Certification

Pursuant to Local Rule 3.01(g), the undersigned certifies that movant conferred in good faith with Plaintiff's counsel, Shumaker, Loop & Kendrick, LLP, including Ryan Nichols, Jarrod Malone, and Michael Taaffe, on February 20, 2022 (via email) and March 3, 2022 (via video conference), and the parties have not agreed on resolution of the motion.  Accordingly, the motion is opposed by Plaintiff.

March 4, 2022

Respectfully submitted:

**LASH & GOLDBERG LLP**
Suite 1200, Miami Tower
100 Southeast Second Street
Miami, Florida 33131-2100
(305) 347-4040/Fax: (305) 347-4050
*Counsel for Defendants HCA Holdings,*
*Inc. and Doctors Same Day Surgery*
*Center, Inc.*

By: */s/ Martin B. Goldberg*

Martin B. Goldberg
Florida Bar No. 827029
Daryl L. Saylor
Florida Bar No. 100376
Michael Strauch
Florida Bar No. 13988
Benjamin Shiekman
Florida Bar No. 113114
mgoldberg@lashgoldberg.com
dsaylor@lashgoldberg.com
mstrauch@lashgoldberg.com
bshiekman@lashgoldberg.com



**MIAMI** 100 Southeast 2nd Street, Suite 1200  •  Miami, Florida  33131-2158  •  305 347 4040 tel   305 347 4050 fax
**FT. LAUDERDALE** 2500 Weston Road, Suite 220  •  Weston, Florida  33331-3615  •  954 384 2500 tel   954 384 2510 fax
**TAMPA** 142 West Platt Street, Suite 118  •  Tampa, FL 33606-2315  •  813-284-4002 tel

LASHGOLDBERG.COM

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on March 4, 2022 I electronically filed the foregoing document with the Clerk of Court using CM/ECF. I also certify that the foregoing document is being served via CM/ECF system upon all counsel of record.

By: */s/ Martin B. Goldberg*
Martin B. Goldberg

32

Lash&Goldberg LLP
LASHGOLDBERG.COM

**MIAMI** 100 Southeast 2nd Street, Suite 1200  •  Miami, Florida  33131-2158  •  305 347 4040 tel   305 347 4050 fax
**FT. LAUDERDALE** 2500 Weston Road, Suite 220  •  Weston, Florida  33331-3615  •  954 384 2500 tel   954 384 2510 fax
**TAMPA** 142 West Platt Street, Suite 118  •  Tampa, FL 33606-2315  •  813-284-4002 tel