UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

**LOCATION 24, LLC**

      **Plaintiff,**

                                **8:22-cv-150-VMC-TGW**

**DOCTORS SAME DAY SURGERY
CENTER, INC. and
HCA HOLDINGS, INC.**

      **Defendants.**

_____/

## PLAINTIFF'S OPPOSITION TO DEFENDANTS' MOTION TO DISMISS

Plaintiff, Location 24, LLC ("Plaintiff"), by and through its undersigned counsel, hereby files its Opposition to Defendants, Doctors Same Day Surgery Center, Inc. and HCA Holdings, Inc.'s ("Defendants") Motion to Dismiss (Doc. 26, the "Motion to Dismiss" or "MTD") and states as follows:

## INTRODUCTION

Defendants attempt to label this lawsuit as an action by Plaintiff that "contorts an unexceptional commercial dispute into an antitrust lawsuit." MTD at pg. 1. In reality, Plaintiff filed a complex Complaint (Doc. 3, the "Complaint" or "Compl.") charging one of the largest health care providers in the United States with a multi-million dollar fraudulent scheme that is intentionally designed to cause injury to patients, medical professionals and their practices,

and reduce the number of market participants in specific regional surgical markets; notably, the Sarasota Area Orthopedic Surgery Market. *Id.* at ¶¶ 28-77.

Defendants' MTD improperly argues facts and prematurely requests that the Court apply a summary judgment analysis by repeatedly arguing that Plaintiff failed to plead specific facts that, in reality, are either: (a) not required to be pled; or (b) were pled, but disagree with Defendants' skewed interpretation of the Complaint. The Complaint sufficiently conforms to the pleading requirements for antitrust actions dictated by applicable law, thus putting Defendants on fair notice of Plaintiff's claims, the grounds upon which they rest, and supports the inference that discovery will provide evidence of Defendants' unlawful conduct—*nothing more is required at the pleading stage*. Accordingly, Plaintiff respectfully requests that Defendants' MTD be denied.

## BACKGROUND

Defendants are unlawfully attempting to control the orthopedic surgery market share in specific geographical areas via partnerships with successful surgical practices in the co-ownership of ambulatory surgery centers. *Id.* at ¶ 29. As the General Partner, Defendants use their position to manipulate the operation of surgery centers for the benefit of their wholly owned hospitals and to control area markets through anticompetitive tactics. *Id.* at ¶ 28-29, 38-41.

Defendants' anticompetitive conduct includes but is not limited to:

- Prohibiting Plaintiff from scheduling procedures while allowing Defendants'' wholly owned hospitals to so in order to limit patients' choices for medical care, divert procedures and patients to their hospitals, and maintain control over Plaintiff's surgical practice. *Id.* at ¶ 28, 36, 38, 57.;

- Manipulating market salaries by preventing their partner surgery centers offering competitive compensation. Defendants then allow their wholly owned hospitals to offer more competitive compensation packages to frustrate surgery center output and capture these essential employees for their own use. *Id.* at ¶ 28, 39, 56.;

- Prohibiting medical equipment and supply vendors from offering competitive pricing to partners such as Plaintiff. Defendants leverage the threat of taking away lucrative national contracts from vendors to prevent competition. *Id.* at ¶ 28, 35, 41.;

- Refusing to implement the 23-hour stay at <u>all</u> of Defendants' Sarasota area surgery centers to insure high-acuity procedures remain at Defendants' wholly owned hospitals. *Id.* at ¶ 28, 58-61.; and

- Refusing to properly operate, maintain, improve, and modernize the surgery centers to prevent the surgery centers from being on par with Defendants' hospitals. *Id.* at ¶ 28, 39, 40, 54-56, 58-63, 68-77, Doc. 3-3, Doc. 3-4.

While conducting this scheme at the expense of its partners, Defendants

realize monthly profits from the surgery centers and a monthly management fee from each surgery center.  *Id*. at ¶77.  In Plaintiff's case, Defendants receive 6% of the monthly net revenues of the surgery center for its supposed management services *in addition to Defendants' profit share, which is in excess of 51% of the ownership interest of the partnership*. *Id*. at ¶ 13, 77, Doc. 3-1, pg. 18, Sect. 9.1.  The desired result of this scheme is Defendants' assumption of control over the orthopedic surgery market in specific geographical areas and the effective removal of its most successful competitors such as Plaintiff.  *Id*. at 30, 32-33, 76.

## MEMORANDUM OF LAW

### A.  Standard Of Review

The "11th Circuit has cautioned that 'Rule 12(b)(6) dismissals are disfavored in fact-intensive antitrust cases.'" *Lakeland Regional Medical Center, Inc. v. Astellas US LLC,* 2011 WL 3035226 (M.D. Fla. 2011) (quoting *Spanish Broad. Sys. of Fla., Inc. v. Clear Channel Comms., Inc.* 376 F. 3d 1065, 1070 (11th Cir. 2004)). Further, "'summary procedures should be used sparingly in complex antitrust litigation where motive and intent play leading roles, the proof is largely in the hands of the alleged conspirators…'"  *Id.* (quoting *Amey, Inc. v. Gulf Abstract & Title, Inc.*, 758 F.2d 1486, 1502 (11th Cir. 1985)).

The standard on a motion to dismiss is not whether Plaintiffs will ultimately prevail on their theories, but whether the allegations in the Complaint

are sufficient to allow them to conduct discovery in an attempt to prove those allegations. *Jackam v. Hosp. Corp. of Am. Mideast, Ltd.*, 800 F.2d 1577, 1579 (11th Cir.1986). Discovery is especially important in this matter due to the sheer size of HCA and that the HCA-owned General Partner, Defendant Doctors Same Day Surgery Center, Inc., controls **all** of the documents in this case. Further, "a well-pleaded complaint may proceed even if it strikes a savvy judge that actual proof of those facts is improbable and 'that a recovery is very remote and unlikely.' "*Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 556, (2007).

**B. <u>Sections II And III 1(B) Of Defendants' MTD Improperly Incorporate Facts And Materials Outside Of Plaintiff's Complaint And Must Be Excluded From This Court's Analysis</u>**

Defendants improperly attempt to argue additional facts that are not contained in Plaintiff's Complaint. In Section II ("Background") of their MTD, Defendants improperly argue: (a) Plaintiff's motives for initiating this lawsuit (MTD at pg.1); (b) Defendants' justification for their refusal to implement the 23-hours stay in its surgery centers and attaching internet links to data from various organizations to support their argument (MTD at pgs. 3-4, FN 4); (c) the profitability of the partnership between Plaintiff and Defendants (MTD at pg. 4); and (d) Defendants' justification for controlling partnership share sale price (MTD at pg. 5). In Section III 1(B) (Failure to Plead a Relevant Market), Defendants improperly argue "…the Complaint fails to state a viable antitrust

action because the proposed markets are unsustainable."   MTD at pg. 13. Further, Defendants provide no affidavits or supporting documents to support their arguments and conclusions.

"This Court's analysis is confined to the four corners of the complaint." *Lakeland Regional Medical Center, Inc.*, 2011 WL 3035226 at *3.  If this Court were to consider the above in its decision regarding Defendants' MTD, it would be converting Defendants' motion to a motion for summary judgment. *See Lewis v. Asplundh Tree Expert Co.*, 305 Fed. Appx. 623, 627 (11th Cir. 2008).    Given the fact that discovery has not taken place, a summary judgment analysis is premature. *Lakeland Regional Medical Center, Inc.*, 2011 WL 3035226 at *3 ("Without the benefit of discovery, it would be premature for the Court to conduct summary judgment analysis.").  For the reasons stated above, the MTD Sections II, III 1(B), and all footnotes containing additional arguments and links to extraneous support must be disregarded in this Court's analysis. Plaintiff refrained from responding to Defendant's arguments to conform with the Court's rules.  If the Court wishes Plaintiff to rebut these arguments, Plaintiff has the information to do so.

### C. <u>Plaintiff Has Standing For Its Antitrust Claims</u>

Defendants argue that Plaintiff lacks antitrust standing because the Complaint fails to plead harm to competition. MTD at pgs. 6-11.   There is no

requirement that Plaintiff's injuries be caused by the harm to competition. *Atl. Richfield Co. v. USA Petroleum Co.*, 495 U.S. 328, 344 (1990).

Defendants ignore the Middle District's two-pronged analysis for standing and instead apply their own interpretation. Accordingly, Defendants' argument for standing fails as it does not comport with the established law followed by this Court.

### a. Defendants Apply An Incorrect Analysis For Standing

In their standing analysis, Defendants apply aspects of *Todorov v. DCH Healthcare Auth.*, 921 F.2d 1438 (11th Cir. 1991), *Johnson v. Univ. Health Servs., Inc.*, 161 F.3d 1334, 1338 (11th Cir. 1998), and *Spanish Broadcasting*. MTD at pgs. 6-11.

*Todorov* and *Johnson* should not be analyzed in conjunction with Defendants' MTD as both cases were decided at the summary judgment stage—applying these cases at this stage of litigation improperly calls for a premature analysis by this Court.

In its analysis of *Spanish Broadcasting*, The Middle District opined:

> It is not entirely clear whether the requirement under *Spanish Broadcasting* is a heightening of the burden under *Brunswick* or an additional requirement. Similarly, it is doubtful whether an injury to competition as contemplated by the *Spanish Broadcasting* Court ought to even be referred to as *antitrust injury*.

*Lockheed Martin Corp. v. Boeing Co.*, 390 F.Supp 2d 1073, 1081 (M.D. Fla. 2005).

Defendants' argument that Plaintiff fails to allege injury to competition under

*Spanish Broadcasting* fails because facts of *Spanish Broadcasting* and the instant case are vastly different.    In *Spanish Broadcasting,* the plaintiff attributed damages only to itself, admitted that consumer prices were actually lower than they might be absent the defendant's activities, and alleged that its own market share *grew* prior to litigation.  *See Lucasys Inc. v. PowerPlan, Inc.*, 2021 WL 5279391, *14 (N.D. Ga. 2021) (denying defendant's motion to dismiss antitrust action for standing based on *Spanish Broadcasting* and failure to allege plausible injury to competition).

### b.  The 11th Circuit Test For Antitrust Standing Is The Proper Analysis

The 11th Circuit applies a two-pronged test to determine whether a Plaintiff has antitrust standing: (1) did plaintiff suffer "antitrust harm"; and (2) is plaintiff an "efficient enforcer" of the antitrust laws. *Florida Seed Co. v. Monsanto Co.*, 105 F.3d 1372, 1374 (11th Cir. 1997) (citing *Brunswick Corp. v. Pueblo Bowl-O-Mat, Inc.*, 429 U.S. 477, 489 (1977)).

### c.  Plaintiff Alleges Antitrust Injury (Prong 1)

The first prong determines whether the injury alleged is "of the type the antitrust laws were intended to prevent" and whether it "flows from that which makes defendants' acts unlawful." *Brunswick*, 429 U.S. at 489.    Despite Defendants' argument, this requirement does ***not*** require Plaintiff to establish that its injuries were caused by the harm to competition as a whole; rather, their

injuries must "stem from a competition-reducing aspect or effect of the defendant's behavior." *Atl. Richfield Co.*, 495 U.S. 328, 344 (1990).

Plaintiff alleges antitrust injury in its Complaint through its allegations of past and ongoing financial harm, harm to public interest/harm to patients' right to choose medical providers, and harm to competition/marketplace as a direct result of Defendants' anticompetitive actions:

- Defendants conspire with medical equipment vendors to deny competitive pricing to Plaintiff and other market participants. Comp. at ¶ 28, 35, 41.;

- Defendants impede patients' rights to choose where and when they can have medical procedures performed by controlling the Surgery Center's availability for procedures. *Id.* at ¶ 28, 36, 38, 57.; and

- Defendants refuse to implement the 23-hour stay at all of their Sarasota area surgery centers with the intent to keep higher acuity procedures at their wholly owned hospitals. *Id.* at ¶ 28, 58-61.

Plaintiff's above-stated allegations meet the requirements for Antitrust standing, are the *exact* types of injuries that antitrust laws are designed to remedy, and flow directly from Defendants' scheme which renders them unlawful: the restriction of patients' ability to choose medical providers, the prevention of Plaintiff and other market participants from obtaining competitive pricing on medical equipment, and Defendants' prevention of any of its Sarasota

area surgery centers from implementing the 23-hour stay.

### d.  Plaintiff Alleges That It Is An Efficient Enforcer (Prong 2)

Regarding the second prong of the test for standing, the courts look to several factors including but not limited to directness of injury, whether the alleged damages are speculative, and whether the plaintiff would be able to efficiently and effectively enforce the judgment.  *See Omni Healthcare, Inc. v. Health First, Inc.* 2015WL275806, *7 (M.D. Fla. 2015).   Further, "[t]hose factors are nonexclusive, 'often intertwined,' and 'no single factor will necessarily predominate over the others.'"  *Id.* (citing *Palmyra Park Hosp. Inc. v. Phoebe Putney Mem'l Hosp.*, 604 F.3d 1291, 1299 (11th Cir. 2010)).   Finally, "[s]o long as the efficient-enforcer factors weigh in their favor, plaintiffs who are necessary to and harmed by an anticompetitive scheme to manipulate a market have antitrust standing…"  *Id.* (quoting *Blue Shield of Va. V. McCready,* 457 U.S. 465, 482 (1982)).

The 11th Circuit also utilizes the "target area test," which requires that a plaintiff "must be the one against whom the conspiracy is aimed" or "within the sector of the economy which is the target of the antitrust violation" or "a foreseeable victim of the anti-competitive conduct." *Amey, Inc.*, 758 F.2d at 1494 (quoting *Jeffrey v. Southwestern Bell,* 518 F.2d 1129, 1131 (5th Cir.1975)).

Plaintiff's injuries are direct and include but are not limited to financial harm through the disruption of Plaintiff's operations by Defendants,

manipulation of Plaintiff's surgery schedule by Defendants, Plaintiff's exclusion from competitive vendor pricing by Defendants, and Defendants' manipulation of surgery center staff compensation in order to benefit their wholly owned hospitals.  Compl. at ¶¶28-77.  While patients and other market competitors are injured by Defendants, the party sustaining the most *direct* harm from Defendants' scheme is the Plaintiff itself.  *Id.*

Regarding the target area test, Plaintiff consists of a group of orthopedic surgeons competing in the Sarasota orthopedic surgery market (Compl. at ¶ 4) and as the targets of the exclusionary practices described above, Plaintiff's injuries stated above are the actual and intended consequences of Defendants' scheme. Compl. at ¶¶28-77.  Finally, there is no indication that Plaintiff or its counsel would be unable to enforce a favorable judgment (including monetary and other relief to prevent the continuation of the scheme) and no risk of duplicative recovery as patients and other market participants cannot recover Plaintiff's lost profits as a result of Defendants' scheme—although they will benefit from the other requested relief to halt the scheme. Based on the above, Plaintiff firmly establishes that it is an efficient enforcer.

D. **Plaintiff Sufficiently Pleads A Relevant Market**

There is no requirement that the market definition elements of antitrust claims be pled with specificity. *Newcal Indus. v. Ikon Office Solution*, 513 F.3d 1038,

1044 (9th Cir. 2008); *See also Omni Healthcare*, 2015 WL275806 at *10 ("to survive a motion to dismiss, antitrust plaintiffs need only 'present enough information in their complaint to plausibly suggest [those dimensions'] contours'").

Defendants improperly argue the facts on a motion to dismiss by alleging "the proposed markets are unsustainable." MTD at Pg. 13.   Challenging the viability of relevant markets at the pleading stage should be discouraged. The composition of the "relevant market" is a "question of fact" usually resolved by the jury.  *Thompson v. Metropolitan Multi-List*, 934 F.2d 1566, 1573 (11th Cir. 1991).

A relevant antitrust market has two aspects: a geographic market and product market. *See McWane, Inc. v. FTC*, 783 F.3d 814, 828 (11th Cir. 2015), *cert. denied*, 136 S. Ct. 1452 (2016). The fact that discovery is required before challenging the definition of a relevant market is evidenced by Defendants' continued application of cases that were decided at the summary judgment stage (*Jacobs v. Tempur-Pedic Int'l, Inc.*, 626 F.3d 1327 (11th Cir. 2010) and *JES Props., Inc. v. USA Equestrian, Inc.*, 253 F.Supp.2d 1273, 1283 (M.D. Fla. 2003)). MTD at pgs. 12-13.

The geographic market alleged by Plaintiff, the orthopedic surgical market in the Sarasota, Florida area, is neither conclusory nor vague.   In actuality, Defendants themselves defined the geographic area in the underlying Partnership Agreement executed between Defendants and Plaintiff.  Doc. 3-1.

The Partnership Agreement defines the location of the Surgery Center as "5741 Bee Ridge Road, Sarasota, Florida 34233" (*Id. at* pg. 3), states the principal place of business for the partnership is the Surgery Center (*Id.* at pg. 11), and defines the geographic area by referencing the non-compete clause in its definition of "restrictive area:" "'Restrictive Area' shall be as defined in Section 14.1." *Id* at pg. 9.   Section 14.1 ("Non-Competition Agreement") of the Partnership Agreement states that Plaintiff may not "own, acquire or have any other investment interest…in any facility …located within a 25-mile radius" of the Surgery Center. *Id.* at pgs. 21-22. Based on the specific language of the Partnership Agreement, the Sarasota area is the area to which Plaintiff's non-compete agreement pertained.   Further, Plaintiff ensured that a map of the Sarasota area identifying the locations of Defendants' surgery centers and wholly owned hospitals was contained in the Complaint. Compl. at ¶23.   *See Omni Healthcare, Inc.*, 2015 WL 275806 at *12 (holding that "Southern Brevard County" was sufficient to provide defendants with notice and concrete boundaries for discovery purposes).

Defendants' argument that the "orthopedic surgical services market" is not adequately defined by Plaintiff and should be "limited to narrower specialties" (MTD at pg. 13) is equally unavailing.   In *Pierson v. Orlando Regional Healthcare Sys., Inc.* 619 F. Supp.2d 1260, 1279 (M.D. Fla. 2009), the court specifically stated

that the plaintiff's market definition, "the market for specialized level one trauma services and emergency medicine in Central Florida," was "too narrow."  The court further held that "[t]he relevant market is either the market for *orthopedic surgery services or the market for emergency orthopedic surgery services within a geographic area—here, Orlando or even 'central Florida.'"  *Id. at* 1280 (emphasis added).

Plaintiff sufficiently alleges the relevant market and meets the burden imposed by this Court to survive a motion to dismiss.

### E.  Plaintiff Properly Alleges A Section I Claim (Count I)

"A plaintiff attempting to plead a conspiracy to restrain trade under Section 1…must allege 1) an agreement to enter a conspiracy, 2) designed to achieve an unlawful objective." *Lockheed Martin Corp.*, 390 F.Supp.2d at 1082 (quoting *Aquatherm Indus., Inc. v. Fla. Power & Light Co.*, 145 F.3d 1258, 1262 (11th Cir. 1998)).

#### a. Plaintiff Sufficiently Alleges An Agreement To Enter Into A Conspiracy

Regarding the first requirement, *an agreement to enter into a conspiracy*, Plaintiff alleges that Defendants *and* medical supply vendors conspire to control medical hardware pricing. Comp. at ¶¶ 28, 35, 41, 78-82, 106, 121, 131.  It is impossible for Defendants to control the prices charged by vendors without the assistance of the vendors.  Accordingly, Plaintiff sufficiently alleges an

agreement between Defendants and vendors.

### b.  Plaintiff Alleges An Unlawful Objective

Regarding the second requirement, *designed to achieve an unlawful objective*, Plaintiff alleges the purpose of the conspiracy is to prevent Plaintiff and other market participants from obtaining favorable hardware pricing.  *Id.*  Plaintiff further alleges that Defendants force this agreement upon vendors via Defendants' threats of taking away lucrative national contracts from these vendors. *Id*.  The above statement is an allegation, not a passing reference "purporting" that vendors were part of the conspiracy as Defendants argue.

The sufficiency of Plaintiff's allegations is further evidenced by the Middle District's holding in *Lockheed Martin Corp.*: "[a]lthough the Court is somewhat skeptical that Lockheed Martin can ultimately show the actions of Boeing's alleged conspirators…the Court nevertheless cannot say that it 'appears beyond doubt' that Lockheed Martin 'can prove no set of facts which would entitle it to relief' on its conspiracy claims.'" *Lockheed Martin Corp.*, 390 F.Supp 2d at 1083.

Despite Defendants' arguments, there is no particularity requirement for pleading antitrust conspiracies. Pleading antitrust violations with plausibility "does not impose a probability requirement at the pleading stage; it simply calls for enough fact to raise a reasonable expectation that discovery will reveal evidence of illegal agreement." *Twombly*, 550 U.S. at 556.

**F.  Plaintiff Withdraws Count II Of The Complaint**

Plaintiff respectfully requests that the Court allow Plaintiff to withdraw Count II without prejudice and allow Plaintiff the opportunity to amend same.

**G.  Plaintiff Sufficiently Pleads A Section 2 Claim (Count III)**

"An antitrust claim brought under section 2 of the Sherman Act involves fact intensive analysis, and motions to dismiss these claims should be granted very sparingly." *Iris Wireless LLC v. Syniverse Technologies*, 49 F.Supp.3d 1022, 1029 (M.D. Fla. 2014) (citing *Hosp. Bldg. Co. v. Trustees of Rex Hosp.*, 425 U.S. (1976) ("in antitrust cases, where 'the proof is largely in the hands of the alleged conspirators,' dismissals prior to giving the plaintiff ample opportunity for discovery should be granted very sparingly.").

Plaintiff's Count III is "Conspiracy to Monopolize in Violation of Section 2 of the Sherman Act (15 U.S.C. § 2)."  Compl. at ¶¶ 95-100.  Defendants improperly apply elements for *attempted* monopolization, and erroneously require a showing of monopoly power and proof that the orthopedic surgery market in Sarasota is "competitive."  MTD at pgs. 21-24.

The Middle District, 11th Circuit, and U. S. Supreme Court specifically make a distinction between *attempted* monopolization and *conspiracy* to monopolize for Section 2 claims per Defendants' supporting authority and several other cases.  "… [t]here are three distinct violations actionable under

section 2 of the Sherman Act: (1) monopolization; (2) attempt to monopolize; and (3) conspiracy to monopolize." *JES Properties, Inc.*, 253 F.Supp.2d at 1283; *See also Spectrum Sports, Inc. v. McQuillan,* 506 U.S. 447 (1993); *Spanish Broadcasting*, 376 F. 3d 1065 at 1068, 1074, 1075; *Levine v. Cent. Fla. Med. Affiliates, Inc.*, 72 F.3d 1538, 1556 (11th Cir. 1996); *Pierson* 619 F.Supp.2d at 1281.

Again, regarding Defendants' argument, there is a difference with Plaintiff's claim: the Middle District holds that "a claim for conspiracy to monopolize does *not* require a showing of monopoly power."  *Levine*, 72 F.3d at 1556 (emphasis added).  Defendant's reliance *Eastman Kodak Co. v. Image Tech. Servs., Inc.*, 504 U.S. 451 (1992) is inapplicable because it requires a showing of market power in situations where there is evidence of tying arrangements, which is not alleged by Plaintiff.

Per the Middle District: "[t]he elements of a claim of 'conspiracy to monopolize' under Section 2 are ' "(1) concerted action deliberately entered into with the specific intent of achieving a monopoly; and (2) the commission of at least one overt act in furtherance of the conspiracy."' *Pierson* 619 F. Supp.2d at 1281 (quoting *Levine,* 72 F.3d at 1556)); *Lockheed Martin Corp.*, 390 F.Supp 2d at 1082; *Aquatherm Indus., Inc. v. Fla. Power & Light Co.*, 971 F.Supp. 1419, 1427 (M.D. Fla. 1997) (*citing Todorov v. DCH Healthcare Authority,* 921 F.2d at 1460 n. 35 (11th Cir.1991)).

Regarding a concerted action, Plaintiff alleges Defendants force medical supply vendors to conspire with them in order to control medical hardware pricing. Compl. at ¶¶ 28, 35, 41, 78-82, 106, 121, 131. Plaintiffs allege an overt act in furtherance of this conspiracy by allegations that Defendants have already prevented Plaintiff from obtaining competitive pricing through this agreement, prevented Plaintiff from efficiently operating its practice, and causing Plaintiff to incur monetary damages. Compl. at ¶41, 98-99, 107-108, 112, 121-122, 132.

## H. Plaintiff Sufficiently Pleads Tortious Interference (Count VIII)

Defendants argue that Plaintiff's claim fails because Plaintiff fails to allege the existence of a business relationship. This is an untenable argument as discussed herein. The Middle District holds that "a plaintiff may properly bring a cause of action alleging tortious interference with present or prospective customers." *Burge v. Ferguson*, 619 F.Supp2d. 1225, 1239 (M.D. Fla. 2008) (citing *Ethan Allen, Inc. v. Georgetown Manor, Inc.*, 647 So.2d 812, 814 (Fla. 1994)). Despite Defendants' argument, there is no requirement for Plaintiff to define "specific relationships with particular third parties" in its Complaint. *Id.* at 1240 (holding that "patients" suffice as an identifiable business relationship under Rule 8(a)'s notice pleading standard.) (citing *Future Tech Int'l, Inc. v. Tae Il Media, Ltd.*, 944 F.Supp. 1538, 1570 (S.D.Fla.1996) (Marcus, D.J.) ("Although the complaint is drafted at a high order of abstraction, and does not specifically identify each of

the [business] relationships allegedly interfered with, we are hard pressed to conclude that at this early stage of the proceedings that [the plaintiff] could prove no facts to support its cause of action. Additional specificity is not required under our liberal system of notice pleading.").

Plaintiff alleges that Defendants' actions interfered with Plaintiff's relationships with its patients and vendors through equipment price manipulation, forced shutdowns of Plaintiff's operations, cancellation of surgical procedures, and preventing patients from undergoing higher-acuity procedures at the surgery center.  Compl. at ¶¶ 41, 58, 61, 62-64.  Based on the above, Plaintiff's claim survives.

## I. Plaintiff Sufficiently Alleges Fraud (Count IX)

Defendants first argue that Plaintiff's fraud claim lacks particularity. As discussed below, this argument fails.  Under Rule 9(b), the "plaintiff must allege: (1) the precise statements, documents, or misrepresentations made; (2) the time, place, and person responsible for the statement; (3) the content and manner in which these statements misled the [p]laintiffs; and (4) what the defendants gained by the alleged fraud." *State Farm Mutual Automobile Ins. Co. v. Lewin*, 535 F.Supp.3d 1247, 1256 (M.D. Fla. 2021) (citing Am. Dental Ass'n v. Cigna Corp., 605 F.3d 1283, 1291 (11th Cir. 2010)).

Plaintiff's Complaint complies with the above requirements. Plaintiff identifies the precise document involved (the partnership agreement ("ARPA")) (Compl. at ¶¶ 156-158) and attaches same to its Complaint. Doc. 3-1. Plaintiff identifies that the partnership agreement was executed April 1, 2017 between Plaintiff and HCA (Compl. at ¶45), the contract shows that Greg Beasley, President of Doctors Same Day Surgery Center, Inc., executed the agreement. Doc. 3-1 at pg. 53. Plaintiff alleges fraudulent misrepresentation and what Defendants' gained through same via allegations of Defendants' locking Plaintiff into a partnership agreement and then implementing the scheme. Compl. at ¶¶ 28-30, 32, 41, 58, 61, 62-64. The scheme entailed the manipulation of surgical center staff salary, equipment price manipulation, forced shutdowns of Plaintiff's operations, cancellation of Plaintiff's surgical procedures, and preventing patients from undergoing higher-acuity procedures at the surgery center—all for the purpose of benefitting Defendants' position in the Sarasota orthopedic surgery market and their wholly owned hospitals. *Id.*

Defendants also argue that "alleged statements or omissions must be 'attributed to a specific person,' not a corporate entity." Not only have Defendants cited the wrong case in this argument, but they completely misinterpret the underlying analysis they base their argument on.

Defendants erroneously cite *Milazzo v. First Liberty Ins. Co.*, 2021 WL 5843073 (M.D. Fla. 2021), which does not address fraud, as the authority for their argument.  Regardless, there is only a requirement to identify a specific person in the event that the fraud was contained in a *verbal statement. Travelers Prop. Cas. Co. of Am. v. Charlotte Pipe & Foundry Co.*, 2012 WL 983783, (M.D. Fla. 2012). Plaintiff does not allege fraudulent verbal statements in its Complaint and therefore, Defendants' argument regarding this element cannot be considered by the Court.

Defendants' second argument that Plaintiff must plead a misrepresentation of a past or existing fact (MTD at pg. 26) also fails. The Middle District holds that "Florida law recognizes that a promise of future performance is actionable as fraud if 'the promisor had a positive intent not to perform or made a promise without a present intent to perform it." Crossdale v. Burandt, 2015 WL 1277829 (M.D. Fla. 2015) (citing *Bissett v. Ply–Gem Industries, Inc.*, 533 F.2d 142, 145 (5th Cir.1976)); *See also* Dah Chong Hong, Ltd. v. Silk Greenhouse, Inc., 719 F.Supp.1072 (M.D. Fla. 1989).  Plaintiff alleges that Defendants' had no intent to perform when executing the Partnership Agreement and demonstrates this fraud through its allegations of Defendants' multiple anticompetitive actions—manipulation of surgical center staff salary, equipment price manipulation, forced shutdowns of Plaintiff's operations, cancellation of Plaintiff's surgical procedures, and preventing patients from undergoing higher-acuity procedures

at the surgery center.  Compl. at ¶¶ 28-30, 32, 41, 58, 61, 62-64.  Accordingly, Plaintiff's Fraud claim is properly pled.

**J.  Plaintiff  Has Standing For Its Breach Of Fiduciary Duty Claim**

A general partner in a limited partnership stands in a fiduciary relationship with the limited partners of that limited partnership. *In re Monetary Group*, 2 F.3d 1098, 1103 (11th Cir. 1993).  In this case, Plaintiff and Defendant are in a limited partnership, Doctors Same Day Surgery Center, Ltd.  Defendant Doctors Same Day Surgery Center, Inc. is the General Partner and a wholly owned subsidiary of Defendant HCA Holdings, Inc.  Plaintiff, Location 24, LLC, is the Limited Partner.

Defendants' argument that the Plaintiff is precluded from a breach of fiduciary duty claim is, again, another argument lacking merit.  Defendants assert that Plaintiff cannot bring a breach of fiduciary duty claim against Defendants because all damages pled were suffered by the partnership as a whole and "[a]t best, the alleged injury is indirect." MTD at pg. 27.  Defendants conveniently gloss over Defendants' refusal to implement the 23-hour stay in order to keep high-acuity procedures in Defendants' hospitals. *Id.*  Currently, all high-acuity procedures go to Defendants' (the General Partrner's) hospitals where they obviously recoup 100% of the profit and the Limited Partner (Plaintiff) gets nothing.  If the procedures were to be done at the surgery centers

via the 23-hour stay, Defendants would recoup approximately 51% of the profit and Plaintiff the remainder.   Compl. at ¶ 13, Doc. 3-1, pg. 18, Sec. 9.1. Accordingly, the argument that Plaintiff has not directly sustained injury   is demonstrably false and must be disregarded.

### K. The Breach Of Contract Claims Are Sufficiently Pled (Counts V and VI)

"Under Florida law, to state a cause of action for breach of contract, the plaintiff must allege: "(1) the existence of a contract, (2) a breach of the contract, and (3) damages resulting from the breach." *Altamonte Pediatric Associates, P.A. v. Greenway Health, LLC*, 2020 WL 5350303 (M.D. Fla. 2020) (citing Textron Fin. Corp. v. Lentine Marine Inc., 630 F. Supp. 2d 1352, 1356 (S.D. Fla. 2009)).

Defendants again attempt to improperly broaden the pleading requirement for breach of contract claims by arguing the facts of how the contracts were breached and by arguing that Plaintiff was not a party to same. Plaintiff alleges the existence of the contracts. Compl. at ¶¶ 45, 50, DE 3-1, 3-2. Plaintiff alleges the breaches of these contracts.  Compl. at ¶¶ 53-55, 116-121, 127-131.  Plaintiff alleges damages resulting from these contracts.  Compl. at ¶¶ 28-30, 32, 41, 58, 61, 62-64.   Plaintiff is absolutely a party to the Management Agreement as it is incorporated into the Partnership Agreement.  (Doc. 3-1 at pg. 29, Sec. 15.1).   Accordingly, Plaintiff sufficiently pleads both breach of contract claims.

**L.  <u>Plaintiff's Complaint Is Not A Shotgun Pleading</u>**

Defendant's claim that Plaintiff's Complaint is an "indistinguishable monolith" because both Defendants are defined as "HCA" does not give rise to a shotgun pleading classification nor warrant dismissal due to same.  At this stage, Defendants have 100% controlling interest in the Partnership and their actions are indistinguishable. Compl. at ¶13.  Defendants' argument is illogical given the as both Defendants insist they are the same entity: "'the coordinated activity of a parent and its wholly owned subsidiary must be viewed as that of a single enterprise.'" MTD at pg. 14. Further, HCA's website shows that Greg Beasley, President of Defendant/General Partner, Doctors Same Day Surgery Center, Inc. (Doc. 3-1 at pg. 53), is executive leadership with HCA and holds the title of President of HCA's Healthcare Surgery Division.[1]   Additionally, both Defendants have the same address:  One Park Plaza, Nashville Tennessee 37203. Doc. 3-1 at pgs. 15, Art. IV, 54; Doc. 3-2 at pg. 8.  Both Defendants are the same entity, the Complaint gives sufficient notice of the claims against them, and therefore, the Complaint cannot be regarded as a shotgun pleading.

For the reasons stated above, Plaintiff respectfully requests that the Court deny Defendants' Motion to Dismiss in its entirety and any other relief that this Court deems just and appropriate.

---

[1] *See* https://hcahealthcare.com/patients/surgery-center-division/executive-leadership.dot

March 25, 2022

Respectfully submitted:

SHUMAKER, LOOP & KENDRICK, LLP
240 South Pineapple Avenue
Post Office Box 49948
Sarasota, Florida  34230-6948
(941)  366-6660
(941)  366-3999 (fax)
Primary: Rnichols@shumaker.com
Secondary:  Mtaaffe@shumaker.com
Secondary:  JLee@Shumaker.com
Secondary: Aschaffer@shumaker.com
*Attorneys for Plaintiff*

By:    s/Ryan S. Nichols
        Ryan S. Nichols, Esq.
        Florida Bar No. 89838
        Michael S. Taaffe, Esq.
        Florida Bar No.:   0490318

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on March 25, 2022, I electronically filed the foregoing with the Clerk of the Court by using the CM/ECF system.  I also certify that the foregoing document is being served via CM/ECF system upon all counsel of record.

By:    s/Ryan S. Nichols
        Ryan S. Nichols, Esq.

17240820v1                                        25